State v. Lewis

_____

STATE OF NORTH CAROLINA v. JOHNNY LEE LEWIS

No. 50

(Filed 4 December 1979)

1. Constitutional Law § 46— motion to discharge appointed counsel

The trial court did not err in the denial of defendant's motion at trial to discharge his court-appointed counsel, who had been appointed ten months earlier, so that he could employ counsel of his own choosing.

2. Criminal Law § 73.4— admissibility of spontaneous utterance

A witness's spontaneous utterance, "Oh my God," made when the witness discovered the victim's body while crawling across a room in the darkness immediately after defendant shot into the witness's house, was admissible in evidence.

**3. Criminal Law § 88.1— cross-examination—person to whom defendant sold gun**

Where defendant testified that he "got rid of" a .32 cal. automatic pistol three or four days before he bought the pistol with which he shot his wife, it was appropriate for the district attorney to test the credibility of this testimony by asking defendant to whom he had sold the pistol.

**4. Criminal Law § 57— testimony that object "looked like" gun**

A witness's testimony that an object she saw protruding from defendant's pocket on the day of the shooting in question "looked like a gun" did not constitute objectionable opinion testimony but merely connoted an indistinctness of perception or memory.

**5. Criminal Law § 93— order of proof—discretion of court**

The trial court did not err in permitting a State's witness to testify that she had called a police officer before it was established that there was a need for a police officer to come to her residence, since the trial court has the discretion to permit the introduction of evidence which depends for its admissibility on some preliminary showing upon counsel's assurance that such showing will be forthcoming.

**6. Criminal Law § 75.14— admissibility of confession—defendant nervous, upset and crying**

An officer's testimony on *voir dire* that defendant was nervous and upset and cried from time to time while making an in-custody statement did not render defendant's statement inadmissible in evidence.

ON writ of certiorari to review trial before *McKinnon, J.* Judgment entered 16 November 1978 in Superior Court, ROBESON County.

Defendant was charged by indictment, proper in form, with the first degree murder of his wife on 24 January 1978. At trial the district attorney announced that the State would proceed upon a charge of second degree murder. Defendant was convicted of second degree murder and sentenced to a minimum term of 20 years and a maximum term of life imprisonment.

The State's evidence tends to show the following: On 23 January 1978 defendant's wife (the victim) separated herself from defendant and went to stay with her mother at her grandmother's home. During the day and into the night of 23 January 1978 defendant numerous times undertook to contact his wife by telephone and in person but his efforts were frustrated by his wife's refusal to meet with him and by her relatives' refusal to call her to the telephone. Again during the day of 24 January defendant's efforts to talk with his wife proved fruitless. Finally

on the night of 24 January 1978 defendant went to the victim's grandmother's home where he fired his pistol several times through the window of the house. Four of these shots struck defendant's wife, and she died from the gunshot wounds early the following morning. After firing the shots defendant tried to gain entrance through the front door into the victim's grandmother's home, but was unable to do so. He then left and went to the police station where he announced that he had shot his wife and made an offer to shoot himself. The defendant was disarmed and he later gave a full inculpatory statement.

Defendant's evidence tended to show the following: His wife left their home on 23 January 1978 and did not return. During the day and night of 23 January he tried to talk with her but was not permitted to do so. Again during the day of 24 January he unsuccessfully tried to talk with his wife. After dark on 24 January 1978 he determined that he would go to his wife's grandmother's house where his wife was staying, and look through the window to see if she was in the house. If so, he would gain entrance by kicking in the front door so he could talk to her. He carried his pistol with him as protection from ambush along the way. The defendant remembers getting to the yard of his wife's grandmother's house but does not remember anything from that time until two to three weeks later. He does not remember going to the police station or making statements to the officers. Defendant testified that he had experienced "blackouts" before.

*Attorney General Edmisten, by Assistant Attorney General Guy A. Hamlin, for the State.*

*Robert D. Jacobson for the defendant.*

BROCK, Justice.

[1]   Defendant was arrested on 24 January 1978, the night of the shooting, upon a charge of assault with a deadly weapon. Upon the death of defendant's wife during the morning of 25 January 1978 he was charged with murder and taken before District Court Judge Ellis who determined that defendant was indigent and on 25 January 1978 appointed John W. Campbell to represent defendant. Attorney Campbell continued under his appointment to represent defendant from 25 January 1978 until the case was called for trial on 14 November 1978, a period of approximately

ten months. After the case was called for trial and in the absence of the jury the following colloquy occurred:

"COURT: Mr. Lewis, if you have something you want to say, you may stand up and state it.

DEFENDANT: Your Honor, this man don't know too much about the case. I hadn't ever talked to him but about three or four times about thirty minutes in all and I want to get rid of him so I can get me another lawyer and not State-appointed.

COURT: The case has been pending now for some ten months and you have had that opportunity to get a lawyer and apparently haven't done so before now. I am sure Mr. Campbell is prepared to go ahead with the trial as required and I see no reason why it should be delayed at this time.

DEFENDANT: Let me discuss it with him just a second, if you don't mind.

COURT: What is it you want to discuss with him?

DEFENDANT: Well, just go ahead on with it as it is.

COURT: Would you like to talk to him now before we begin any further?

DEFENDANT: No.

COURT: All right. Have the jury come back."

Thereafter attorney Campbell represented defendant and demonstrated throughout the trial that he was indeed prepared for trial. Defendant assigns as error that his motion to discharge his appointed counsel was denied. Judge McKinnon was correct in not allowing defendant to postpone the trial with the stratagem that he suddenly was no longer indigent, wanted to discharge is appointed counsel and employ counsel of his own choosing. It is interesting to note that defendant has not yet employed counsel but is being represented in this Court by appointed counsel. This assignment of error is overruled.

Defendant argues that the trial court committed error in allowing irrelevant and prejudicial evidence to be introduced by the State. For the reasons that follow, we disagree.

[2]  As the victim's mother was testifying, she described the activities in the house while the lights were out immediately following the shooting. As she was crawling across the living room she came to her daughter lying on the floor and exclaimed "Oh my God." A spontaneous utterance of this nature by a participant or bystander, made without time for reflection or fabrication, is admissible. 1 Stansbury's North Carolina Evidence § 164 (Brandis rev. 1973). Also during the testimony of the victim's mother she was permitted to identify a photograph of the victim and defendant taken about a year before the date of the shooting. While it appears that the photograph was irrelevant to the trial of this cause its introduction into evidence clearly was not prejudicial to defendant. It merely portrayed defendant and his wife (the victim) at or about the time they were married.

[3]  During the cross-examination of defendant by the district attorney the defendant in explaining why he purchased the pistol with which he shot his wife volunteered that he had a hobby of buying and selling guns, and that he had a .32 cal. automatic which he "got rid of" about three or four days before he bought the pistol with which he shot his wife. When the district attorney asked to whom he sold the .32 cal. automatic defendant objected. The objection was overruled. Even so defendant refused to directly answer the question. He replied that he sold all of them legally. The question was not pursued further. Having volunteered that he "got rid of" the .32 cal. automatic two or three days before he purchased the pistol in evidence it was appropriate for the district attorney to test the credibility of this testimony by asking to whom he sold the .32 cal. automatic. We perceive no error or prejudice to defendant.

[4]  The remaining exception under this argument by defendant is that a State's witness (a brother of the victim) was allowed to testify that on the day of the shooting the victim was riding in a car with him when they passed defendant on a street in Lumberton; that defendant stepped out in the street as they passed; that the victim ducked down in the car; and that an object was protruding from defendant's trousers pocket. When asked what the object was the witness replied: "It looked like a gun." This was not objectionable opinion testimony. The statement merely connoted an indistinctness of perception or memory and was not ob-

jectionable, although it carried little weight. 1 Stansbury's North Carolina Evidence § 122 (Brandis rev. 1973).

[5]   Defendant next argues that in many instances the State was permitted to offer evidence when "no proper foundation" for its reception had been laid. It is not argued that no foundation was in fact laid. These arguments center upon the order in which the evidence was admitted. We disagree with all of defendant's arguments along this line. Our reading of the record discloses that the State proceeded in as nearly a chronological manner as practical. We will not discuss each of the instances to which defendant calls our attention, one example will suffice: Defendant argues that it was error to permit a State's witness to testify that she "had called the police officer before establishing that there was a need for a police officer to come to her residence." It is within the discretion of the trial judge to permit the introduction of evidence which depends for its admissibility on some preliminary showing upon counsel's assurance that such showing will be forthcoming. 1 Stansbury's North Carolina Evidence § 24 (Brandis rev. 1973). We think the trial judge in this case summed up the answers to all of defendant's objections along this line when he overruled one of defendant's objections that "no proper foundation had been laid" by stating to defense counsel: "You have to start somewhere."

Under his next assignment of error defendant asserts three instances in which evidence was admitted that he argues had no logical tendency to prove any fact in issue in the case. We disagree with defendant. Without discussion of each instance we dispose of these arguments by stating that we have reviewed the evidence referred to and defendant's arguments thereon. In our opinion the evidence complained of was properly admitted for the purpose for which it was offered.

Under his next assignment of error defendant points out instances in which he contends the district attorney was allowed to ask improper, leading questions. We disagree with defendant. It is elementary learning that the trial judge, in his discretion, may permit leading questions in appropriate instances. Our reading of the record discloses that in each instance complained of by defendant the permitting of a leading question was justified and appropriate. The able trial judge in no way abused his discretion.

[6]  The next assignment of error argued by defendant challenges the admission into evidence of his confession. He argues that he was upset, nervous, and crying to the extent that he did not rationally waive his rights. The defendant did not testify or otherwise offer evidence on voir dire. His testimony at trial tended to show that he did not remember going to the police station or talking to the officers. He in no way and at no time offered evidence of a lack of understanding on his part of warnings given to him by the officers or a lack of understanding of the waiver of his rights. Defendant's argument is based upon the testimony of the interrogating officer on cross-examination by defense counsel during the voir dire hearing upon the admissibility of his confession. In response to questions by defense counsel the interrogating officer testified:

> "No, sir. My opinion was he was fully capable of understanding. I don't recall saying that he was highly nervous. I said he was nervous and upset."

> \*   \*   \*

> He was not acting out of the way. He was just nervous and upset. Once in a while, while I was talking to him, he would cry a little bit; then he would straighten up and start talking."

> QUESTION: What was it about him that led you to the conclusion that he was nervous?

> ANSWER: "His crying and his hands were shaking."

At the conclusion of the voir dire the trial judge found, *inter alia*, "that the statement was taken after adequate warning as to his rights at the time when the defendant appeared to be conscious and understanding what he was doing. The Court finds that mere nervousness or being distraught is not sufficient to make the statement inadmissible into evidence." We agree with the trial judge's assessment of the evidence. This assignment of error is overruled.

We have carefully considered the remaining two assignments of error brought forward by defendant and conclude that they are without merit and require no discussion.

The evidence fully justified submitting the issue of second degree murder to the jury and fully supports the verdict of guilty. The judgment entered is supported by the verdict and the law. In our opinion defendant received a full and fair trial, free from prejudicial error.

No error.