STATE OF NORTH CAROLINA v. HENRY FORD ATKINS

No. 14

(Filed 1 December 1981)

**Criminal Law § 33— cross-examination of sheriff as to knowledge of statute—irrelevant**

> In a prosecution for second degree murder where there was evidence that defendant called the deputy sheriff and complained about threats made by and trouble with five boys, including the deceased, and the deputy sheriff advised defendant that his office could not do anything until the defendant had a warrant issued for communicating a threat, the trial court did not err in failing to allow defendant to cross-examine the deputy sheriff as to his knowledge of G.S. § 15A-401(b), specifying when an officer may arrest a person without a warrant, as such testimony would tend to show only the officer's state of mind, not the defendant's, and would have no bearing on the issues before the court.

APPEAL by defendant as of right, pursuant to G.S. § 7A-27(a), from judgment of *Kivett, J.* entered at the 28 July 1980 Session of Superior Court, ROCKINGHAM County, sentencing him to life imprisonment upon his conviction of second degree murder and to a term of twenty years imprisonment upon his conviction of assault with a deadly weapon with intent to kill inflicting serious injury.

*Rufus L. Edmisten, Attorney General by Harry H. Harkins, Jr., Assistant Attorney General, for State of North Carolina.*

*Benjamin R. Wrenn, Attorney for defendant-appellant, Henry Ford Atkins.*

MEYER, Justice.

Defendant was charged in separate bills of indictment, proper in form, with murder in the first degree and assault with a deadly weapon with intent to kill inflicting serious injury. He pled not guilty to each charge and they were consolidated for trial.

The evidence at trial tended to show that during the late afternoon hours of 24 March 1980, as the defendant was returning from a grocery store to his mobile home with Marie Lewis, with whom he lived out of wedlock, Randy Lewis, Marie Lewis's son, attempted to stop the defendant's car. Randy was upset that his mother had moved back in with the defendant after having

separated from him. The defendant continued driving down the road to his trailer, got out of his car and cursed Randy and a group of boys standing with him. Randy, along with his brother Timmy Lewis, followed by Donald Hanks, Dean Hanks, and another person, walked down the road to the defendant's trailer. Donald Hanks, who lived in the same trailer park near Reidsville as did the defendant, owed the defendant $100.00 on a car. That debt had been the subject of an altercation between the defendant and Donald Hanks approximately five days earlier in which the defendant had threatened to kill Donald Hanks.

The Lewis brothers and the defendant exchanged mutual threats. The defendant fired several pistol shots in the group's direction but no one was hit. The boys ran and returned to Donald Hank's trailer. The defendant went inside his trailer, called the sheriff's office and complained to Deputy Sheriff Herman Bolden about the trouble with the five boys. Mr. Bolden advised him that his office could not do anything until the defendant had a warrant issued for communicating a threat, whereupon the defendant responded that he would take care of it himself. Mr. Bolden also talked with the boys and advised them that they could take out a warrant for assault and that they should leave the defendant alone. The defendant called his son, Gary, at a drive-in theater to tell him that he loved him and, according to the defendant's testimony, to tell him to go to live with his mother if anything happened to the defendant; according to the drive-in manager's testimony, to tell him that he was about to do something desperate. Wanda Lewis, the wife of Timmy Lewis, telephoned the defendant a few times. The content of the conversations is in dispute, but it is not in dispute that Henry hung up on her during the last call.

The defendant got into his car and started driving back up the road. Randy approached the car, followed by Dean Hanks. As Randy leaned toward the car, the defendant started firing his gun. Randy was shot twice, first in the neck and then in the abdomen; he died within a matter of minutes. Dean Hanks was also shot twice, in the hip and in the side. He spent seven days and eight nights in a hospital intensive care unit recovering from his wounds.

After the shooting the defendant drove away in his car. The car was later discovered a few miles north of Danville, Virginia.

Inside the vehicle were found a bottle of liquor, three shells in the front seat and two casings in the back seat. The defendant was found by a Virginia State Police trooper on the morning of 25 March 1980 hitchhiking on U.S. Highway #29, north of Danville. When arrested there, he was carrying a .32 caliber semi-automatic pistol in his back pocket.

At his trial defendant contended that he shot both the deceased and Dean Hanks in self-defense. The jury found the defendant guilty of second degree murder in the shooting death of Randy Lewis and guilty of assault with a deadly weapon with intent to kill inflicting serious injury in the shooting of Dean Hanks. He was sentenced to life imprisonment on the second-degree murder conviction, and twenty years on the assault conviction with that sentence to run concurrently with the life sentence.

On appeal the defendant brings forward only one substantive assignment of error—the trial court's refusal to allow him to recall for cross-examination Deputy Sheriff Herman Bolden as to his knowledge of G.S. § 15A-401(b). This statute specifies when an officer may arrest a person without a warrant. Apparently, defendant contends that by questioning the officer about the officer's knowledge of the statute, he could have elicited testimony to the effect that the deceased could have lawfully been arrested without a warrant and thereby buttress his self-defense argument. As pointed out by the trial judge, such testimony would not be relevant to the defendant's state of mind. If anything, it would tend to show only the *officer's* state of mind, not the defendant's, and would have no bearing on any issue before the court. Furthermore, the defendant was given ample opportunity to introduce any relevant evidence concerning his own state of mind or any other matter to support his self-defense contention. In fact, he testified that he feared death or bodily harm, and the trial court properly instructed the jury on self-defense.

The only case cited by the appellant in support of his appeal is *State v. Miller*, 16 N.C. App. 1, 190 S.E. 2d 888 (1972). That case held that the trial court's exclusion of competent evidence on cross-examination which would show bias of the witness against the defendant amounted to prejudicial error. *Miller* is inapposite here. The evidence excluded here was not offered to show bias. It

was irrelevant to any issue in the case. The scope of cross-examination lies largely within the discretion of the trial court, and its rulings should not be disturbed except when prejudicial error is disclosed. *State v. McPherson*, 276 N.C. 482, 172 S.E. 2d 50 (1970); *State v. Ross*, 275 N.C. 550, 169 S.E. 2d 875 (1969), *cert. denied* 397 U.S. 1050 (1970); 4 N.C. Index 3d, Criminal Law § 88.1 (1976). Here, there is no error.

The defendant's only other assignment of error is the trial court's refusal to grant his motion to dismiss made at the close of the State's evidence and renewed at the close of all the evidence. He states that his review of the entire record fails to reveal any prejudicial error. Nevertheless, he requests that this Court review the evidence for any prejudicial errors which may exist. We have carefully reviewed the entire record in this case and find that there was abundant evidence of each of the elements of the two offenses with which the defendant was charged. The trial court correctly allowed both charges to go to the jury with proper instructions. We find that the defendant received a fair trial, free of prejudicial error.

No error.