STATE OF NORTH CAROLINA v. JOHN WESLEY OLIVER AND GEORGE MOORE, JR.

No. 133A82

(Filed 27 September 1983)

1. **Criminal Law § 161— assignment of error—no objection or exception taken at trial—subsequent insertion of the notation "exception" placed throughout record and transcript—review limited**

Under App. R. 10(b)(1), defendants did not properly object to errors at trial where close to one-half of the errors assigned by defendants involved matters to which no objection or exception was taken at trial, and where the assignments of error were brought forward solely on the basis of defendants' subsequent insertion of the notation "exception" placed throughout the record and the trial transcript. A party may not, after trial and judgment, comb through the transcript of the proceedings and randomly insert an exception notation in disregard of the mandates of Rule 10(b). Where no action was taken by counsel during the course of the proceedings, the burden is on the party alleging error to establish its right to review; that is, that an exception, "by rule or law was deemed preserved or taken without any such action," or that the alleged error constitutes plain error. In so doing, a party must, prior to arguing the alleged error in his brief, (a) alert the appellate court that no action was taken by counsel at the trial level, and (b) establish his right to review by asserting in what manner the exception is preserved by rule or law or, when applicable, how the error amounted to a plain error or defect affecting a substantial right which may be noticed although not brought to the attention of the trial court.

2. **Constitutional Law § 31— denial of funds for defendants to retain social psychologist—no error**

The trial court did not err in denying defendants' motions for funds to retain a social psychologist to assist defense counsel during jury selection where defendants made no showing that there was a reasonable likelihood that a social psychologist would materially assist in the preparation of their defenses or that they would not receive a fair trial without a social psychologist's aid. G.S. 7A-450(b).

3. **Jury § 6.4— excusal of jurors for capital punishment views—no error**

There was no error in the systematic exclusion of jurors who stated that they would "automatically" vote against the imposition of capital punishment, and the lack of individual voir dires did not produce a jury comprised of persons who were of the opinion that the death penalty was necessary.

4. **Criminal Law § 43— use of photograph of victim at resentencing hearing and in closing arguments—no error**

In a first degree murder case it was not improper for a jury considering capital resentencing to view photographs, which depicted the manner in which two victims were shot, the precise location of the gunshot wounds, and the scene of one victim's murder behind the counter in the store, which they

State v. Oliver

would have seen had they also determined the defendants' guilt. Nor was it improper for the State to use the photographs of the victims' bodies and the crime scene during closing arguments.

**5. Criminal Law § 113.1— recapitulation of evidence—no plain error**

There was no plain error in the court's recapitulation of the evidence for failure to state to the jury that the evidence showed that one victim was unconscious immediately upon being shot since similar testimony was before the jury and was argued to the jury, and since the evidence was not material to the aggravating factor of "especially heinous, atrocious, or cruel" in that the State relied on the evidence that the victim begged for his life in establishing this aggravating factor. G.S. 15A-1232 and G.S. 15A-2000(e)(9).

**6. Criminal Law § 135.4— evidence that each defendant personally shot a victim—death sentence not excessive**

In a prosecution for first degree murder, applying the decision in *Enmund v. Florida*, --- U.S. --- (1982), imposition of the death sentence on each defendant was not excessive since the evidence showed that one defendant killed one victim and the other defendant killed the other victim.

**7. Criminal Law § 135.4— first degree murder—sentencing hearing—aggravating circumstance of especially heinous, atrocious, or cruel**

In a prosecution for first degree murder, the trial court correctly submitted as an aggravating factor that the murder of a victim was "especially heinous, atrocious, or cruel" pursuant to G.S. 15A-2000(e)(9) with respect to defendant Moore since the evidence showed that the murder was committed in total disregard for the value of human life, was a senseless murder, executed in cold blood as the victim pleaded "please don't shoot me"; and that defendant showed no remorse but in fact later laughingly boasted to his fellow inmates that he pointed the gun at the victim who begged not to be shot and offered defendant more money, and that defendant "kind of liked the idea of it." As to the defendant Oliver, however, the aggravating circumstance was erroneously submitted since defendant Moore's statement concerning what the victim said prior to his death was made after the murder took place, and the statement was inadmissible against defendant Oliver.

**8. Criminal Law § 135.4— first degree murder—sentencing hearing—instructions on aggravating circumstance erroneous**

In a sentencing hearing for a first degree murder conviction, the trial judge's statement essentially defining an especially heinous, atrocious, or cruel murder as one "occurring while a man is begging for his life," was erroneous since evidence of a victim's begging for his life is, like torture, one factor for jury consideration in determining whether a murder is especially heinous, atrocious, or cruel. However, it is not necessarily a determinative factor, and this factor alone does not always necessitate a finding that a murder was especially heinous, atrocious, or cruel.

**9. Criminal Law § 135.4— first degree murder—sentencing hearing—aggravating factor of motivated by desire to avoid detection and apprehension**

In prosecutions for the murders of two victims, the evidence supported the submission of the aggravating factor that the crime was motivated by a

desire to avoid detection and apprehension pursuant to G.S. 15A-2000(e)(4) with respect to defendant Moore in the Watts' murder since Moore was credited with saying "you would have to be crazy to leave any witnesses." Defendant Oliver's act in murdering Hodge and attempting to murder Hodge's seven year old grandson, the only other witness, justified submission of this aggravating factor in Oliver's sentence with respect to Hodge. However, the evidence was insufficient to support submission of G.S. 15A-2000(e)(4) upon defendant Oliver's conviction of the murder of Watts.

**10. Criminal Law § 135.4— first degree murder—sentencing hearing—aggravating factor of pecuniary gain**

Double jeopardy does not preclude the submission of pecuniary gain as an aggravating factor when the underlying felony is armed robbery, and G.S. 15A-2000(e)(6) is not unconstitutionally vague.

**11. Criminal Law § 135.4— first degree murder—sentencing hearing—reminder that guilt already determined**

Instructions and comments to the jury that its function was punishment, not a determination of guilt or innocence, in a sentencing hearing for a first degree murder conviction was in all respects proper.

**12. Criminal Law § 135.4— first degree murder—sentencing hearing—burden to prove mitigating circumstances on defendants**

In a sentencing hearing upon conviction of first degree murder, the burden of persuasion as to the existence of mitigating circumstances is on the defendant.

**13. Criminal Law § 135.4— first degree murder—sentencing hearing—jury unanimity requirement**

In a sentencing hearing upon a conviction of first degree murder, the unanimity requirement of a jury is only placed upon the finding of whether an aggravating or mitigating circumstance exists.

**14. Criminal Law § 135.4— first degree murder—sentencing hearing—prosecutor's questions of prospective jurors**

Statements of a prosecutor asking one juror if she had the "backbone" to impose a sentence of death, and another juror if he had the "intestinal fortitude," were not made to badger or intimidate the witnesses, but rather to determine, in light of their equivocation concerning the death penalty, whether they could comply with the law. As such, these comments could be viewed as favorable, rather than unfavorable to defendants' position and defendants failed to show prejudice.

**15. Criminal Law § 135.4— first degree murder—sentencing hearing—questioning witness concerning his being in protective custody**

Defendant showed no prejudice by the erroneous submission of a witness's testimony, that he was in protective custody, on direct examination, since the legitimate purpose for which the testimony was admitted was established during cross-examination.

State v. Oliver

16. **Criminal Law § 135.4— first degree murder—sentencing hearing—prosecutor's argument to jury—burden on defendants improperly stated—no prejudicial error**

Although a prosecutor in a first degree murder sentencing hearing improperly argued that the burden was on defendants to satisfy the jury that there "is something about these defendants of a redeeming value that gives rise to the mitigation that will cause you to drop it down to life imprisonment," in the context of the fact that the prosecutor then proceeded to work through each of the four steps necessary to reach a recommendation of death, that the counsel for both defendants also worked through each of the four steps and that the trial judge, essentially for the fourth time, reviewed the procedure set out in G.S. 15A-2000, and in the absence of an objection, the statement did not amount to such gross impropriety as to require the trial judge to act *ex mero motu,* or to recall that the statement had been made and later caution the jury to disregard it during his instructions to the jury later that day.

17. **Criminal Law § 135.4— first degree murder—sentencing hearing—"divine law" argument to jury**

Where, in anticipation of defense counsel's similar argument, a prosecutor stated that the death penalty was not inconsistent with scriptures of the Bible, there was nothing, in the absence of objection, that amounted to plain error which would justify reversal.

18. **Criminal Law § 135.4— first degree murder—sentencing hearing—emphasizing victims' rights in closing argument**

There was no error in the prosecutor emphasizing the victims' rights in his closing arguments to the jury since during a sentencing hearing the emphasis is on the circumstances of the crime and the character of the criminal.

19. **Criminal Law § 135.4— first degree murder—joint resentencing hearing—no error**

Inasmuch as G.S. 15A-2000 provides that the same jury may determine both guilt and sentence in a capital case, and accepting an argument that a jury, properly instructed, can in fact give individualized consideration to each defendant's culpability, and did so at the first sentencing hearing, the Court holds that defendants were not prejudiced by a joint trial in the first instance. With respect to resentencing, defendants have failed to show any greater prejudice by holding a joint resentencing trial. Defendants are entitled to no greater advantage than they enjoyed at the initial sentencing.

20. **Criminal Law § 135.4— first degree murder—resentencing hearing—admission of testimony concerning defendant's behavior on death row—no prejudicial error**

In a resentencing hearing for a first degree murder conviction, a defendant's admission that he had killed whites before was introduced solely for the purpose of corroborating the testimony of another witness that the defendant had, in fact, been the "trigger man" in the murder of the victim. Under these circumstances, the testimony was relevant and admissible for the purpose for which it was offered. Further, testimony concerning defendant's assaultive

behavior and uncooperative attitude in prison was relevant to explain or rebut evidence put on by defense attorneys concerning a prison officer's inability to remember an exact date of an incident or the names of the other inmates and it would also have been proper to rebut the statutory mitigating factor of G.S. 15A-2000(f)(7), the age of the defendant at the time of the crime.

21. **Criminal Law § 135.4— first degree murder—resentencing hearing—admission of testimony concerning defendant's prior criminal record**

There was no plain error sufficient to justify awarding defendant a new trial on the basis of a witness being asked, on cross-examination, whether he was aware of defendant's prior convictions on charges of larceny, trespass, damage to real property, and breaking or entering and larceny where the witness had testified on direct that the defendant had never engaged in fighting; had never carried a gun; and had never carried a knife.

22. **Criminal Law § 135.4— first degree murder—resentencing hearing—limiting cross-examination of witness**

There was no prejudicial error in the failure of the trial judge to allow defense counsel to question a witness concerning his earlier inability to identify one defendant since the defendant's guilt had already been determined, and the substance of the question was collateral to sentencing.

23. **Constitutional Law § 48— first degree murder—resentencing hearing—effective assistance of counsel**

Defendant failed to show he was denied effective assistance of counsel where his attorney had represented the State's witness on the witness's appeal to the Court on an unrelated second-degree murder charge.

24. **Criminal Law § 135.4— first degree murder—resentencing hearing—failure to instruct on age as mitigating factor**

There was no error in the trial judge's failure to peremptorily instruct on defendant's age as a mitigating factor. G.S. 15A-2000(f)(7).

25. **Criminal Law § 135.4— first degree murder—resentencing hearing—limiting reputation testimony**

In light of previous testimony concerning the reputation of one defendant, the trial court did not err in ruling that one witness's testimony had become repetitive and in sustaining an objection concerning that testimony.

26. **Criminal Law § 135.4— first degree murder—resentencing hearing—failure to reiterate all instructions for both defendants**

Defendant failed to show how he was prejudiced by the trial judge's stating that his instructions remained the same for defendant Oliver as he had just given for defendant Moore where the trial judge handed out written instruction sheets as to each defendant and each case, and where the trial judge explained Moore's instructions and explained where Oliver's instructions differed.

State v. Oliver

**27. Criminal Law § 135.4—first degree murder—resentencing hearing—sentence of death not disproportionate**

A defendant's sentence of death was neither disproportionate nor excessive where the murder was the result of a deliberate plan to seek out a business establishment to rob, and without the slightest provocation or excuse, to callously and in cold blood shoot at close range anyone unfortunate enough to be present at the time.

Justice MARTIN dissenting in part and concurring in part.

Justice FRYE joins in this opinion.

Justice EXUM dissenting.

DEFENDANTS appeal from judgments imposing sentences of death entered by *Bailey, J.,* at the 25 January 1982 Criminal Session of Superior Court, ROBESON County.

These cases came on for resentencing following a decision of this Court reported at 302 N.C. 28, 274 S.E. 2d 183 (1981). At the first trial defendants were convicted of the first degree murder of Allen Watts and Dayton Hodge. The murders of Watts, a store attendant, and Hodge, a customer at the gas pump, were committed during the course of the armed robbery of a convenience store. Defendant Moore was sentenced to death for the murder of Allen Watts and to life imprisonment for the murder of Dayton Hodge. Defendant Oliver was sentenced to death in both murders. Writing for a unanimous court, Justice Exum found no error in the first degree murder convictions. However, for error found in the sentencing phase of both the Watts and Hodge murders as to defendant Oliver, and the Watts murder as to defendant Moore, the cases were remanded for a new sentencing hearing. Defendant Moore's life sentence for the murder of Dayton Hodge was unaffected by the remand for resentencing.

After considering the evidence at a second sentencing hearing, a jury recommended that defendant Moore be sentenced to death for the Watts murder and that defendant Oliver be sentenced to death for the Watts murder and the Hodge murder.

Facts pertinent to the guilt/innocence phase of the trial are fully discussed in the opinion reported at 302 N.C. 28, 274 S.E. 2d 183 (hereinafter referred to as *Oliver I*). As the issues raised on this appeal relate only to the resentencing, we deem it unnecessary to repeat the facts. Facts necessary to an understand-

ing of the issues raised on this appeal will be discussed in the context of each assignment of error. Because a number of these assignments of error are common to both defendants, the arguments will be consolidated for discussion. Those assignments of error raised by only one defendant or the other will be discussed separately.

*Rufus L. Edmisten, Attorney General, by Joan H. Byers, Assistant Attorney General, for the State.*

*Richard A. Rosen, Attorney for defendant-appellant George Moore, Jr.*

*Frank B. Gibson, Jr., Attorney for defendant-appellant John Wesley Oliver.*

MEYER, Justice.

## I
### COMMON ISSUES

1. Jury selection

2. Photographs

3. Summary of evidence

4. Enmund issue

5. Strickland issue

6. Instructions

    (a) Aggravating factors

        i. henious, atrocious or cruel

        ii. avoiding arrest

        iii. pecuniary gain

    (b) Guilt determination

    (c) Burden on mitigating factors

    (d) G.S. § 15A-2000 violative of eighth amendment

    (e) Sentence recommendation

    (f) Unanimity

7. Prosecutorial misconduct

8. Joint resentencing

## II

### DEFENDANT MOORE

1. Evidentiary issues

2. Ineffective assistance of counsel

3. Peremptory instruction on age in mitigation

## III

### DEFENDANT OLIVER

1. Evidentiary issues

2. Inadequate jury instruction

## IV

### PROPORTIONALITY

[1] We note at the outset that of the over twenty errors assigned by these defendants, close to one-half of these involve matters to which no objection or exception was taken at trial. These assignments of error are brought forward solely on the basis of the defendants' subsequent insertion of the notation "exception" placed throughout the record and the trial transcript. We disapprove of this practice.

Under Rule 10(b)(1) of our Rules of Appellate Procedure:

Any exception which was properly preserved for review by action of counsel taken during the course of proceedings in the trial tribunal by objection noted or which by rule or law was deemed preserved or taken without any such action, may be set out in the record on appeal. . . .

The official commentary to Rule 10 explains that exceptions cannot be later placed into the record at random:

The sifting function which is implicit in this statement might be expressed in more specific form as follows. 1) Every judicial action at the trial court level constitutes potentially prejudicial error to the party disfavored by it; hence the total of

such actions which disfavor the eventually losing or 'aggrieved' party constitute the pool of potentially reversible errors on appeal. 2) But no such error ought be subject of appellate review unless it has been first suggested to the trial judge in time for him to avoid it or to correct it or unless it is of such a fundamental nature that no such prior suggestion should be required of counsel.

The official commentary further states:

Subdivision (b)(1). The first sentence builds upon the point developed in the commentary to subdivision (a), that only those 'exceptions' may be set out in the record on appeal and so made the basis of assignments of error which were taken in the trial court by the classic mode of the spoken or written word 'exception'; or 'deemed' taken from other conduct, as by objecting to the admission of evidence, N.C.R. Civ. P. 46(a)(2), or from other action plainly indicating opposition to judicial action taken or proposed, N.C.R. Civ. P. 46(b); or 'deemed' taken without *any* action by counsel simply because the error is considered sufficiently fundamental, as in instructions to the jury, N.C.R. Civ. P. 46(c).

Rule 10 functions as an important vehicle to insure that errors are not "built into" the record, thereby causing unnecessary appellate review. We have stated on numerous occasions, most recently in *State v. Leggett*, 305 N.C. 213, 287 S.E. 2d 832 (1982), that a failure to except or object to errors at trial constitutes a waiver of the right to assert the alleged error on appeal. *See State v. Jenkins*, 300 N.C. 578, 268 S.E. 2d 458 (1980); *State v. Roberts*, 293 N.C. 1, 235 S.E. 2d 203 (1971).

We have addressed this problem twice during this Spring Session. In *State v. Odom*, 307 N.C. 655, 300 S.E. 2d 375 (1983), we considered the effect of our Rule 10(b)(2) when no objection or exception was made at trial to instructions to the jury, and adopted there the "plain error" rule. In *State v. Black*, 308 N.C. 736, 303 S.E. 2d 804 (1983), we adopted the plain error rule "with equal force" with regard to Rule 10(b)(1) when no objection or exception was made at trial to evidence presented and admitted, stating that:

The rule that unless objection is made to the introduction of evidence at the time the evidence is offered, or unless

there is a timely motion to strike the evidence, any objection thereto is deemed to have been waived is not simply a technical rule of procedure. Were the rule otherwise, an undue if not impossible burden would be placed on the trial judge. There are those occasions when a party feels that evidence which might be incompetent would be advantageous to him, therefore, he does not object. Since the party does not object a trial judge should not have to decide 'on his own' the soundness of a party's trial strategy.

*Id.* at 740, 303 S.E. 2d at 806.

Reading the language of Rule 10(b)(1) that an exception may be properly preserved "by objection noted *or which by rule or law was deemed preserved or taken without any such action,*" together with the language of *State v. Black*, 308 N.C. 736, 303 S.E. 2d 804, and *State v. Odom*, 307 N.C. 655, 300 S.E. 2d 375, we conclude as follows:

1. A party may not, after trial and judgment, comb through the transcript of the proceedings and randomly insert an exception notation in disregard of the mandates of Rule 10(b).

2. Where no action was taken by counsel during the course of the proceedings, the burden is on the party alleging error to establish its right to review; that is, that an exception, "by rule or law was deemed preserved or taken without any such action," or that the alleged error constitutes plain error.

In so doing, a party must, prior to arguing the alleged error in his brief, (a) alert the appellate court that no action was taken by counsel at the trial level, and (b) establish his right to review by asserting in what manner the exception is preserved by rule or law or, when applicable, how the error amounted to a plain error or defect affecting a substantial right which may be noticed although not brought to the attention of the trial court. We caution that our review will be carefully limited to those errors

'in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a "*fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done," or "where [the error] is grave error which amounts to a denial of a fundamental right of the accused," or the error has " 'resulted in

a miscarriage of justice or in the denial to appellant of a fair trial' " or where the error is such as to "seriously affect the fairness, integrity or public reputation of judicial proceedings" or where it can be fairly said "the instructional mistake had a probable impact on the jury's finding that the defendant was guilty." '

*State v. Odom*, 307 N.C. at 660, 300 S.E. 2d at 378 (emphasis in original).

Because the record in the case under consideration was filed prior to *Odom* and *Black*, and because the case involves sentences of death, we have elected to review all errors assigned, whether properly objected to at trial or alleged for the first time on this appeal. Those errors considered under the plain error rule will be reviewed under the standard set forth in *Black*.

I

COMMON ISSUES

1. JURY SELECTION

[2] Defendants contend that the trial court erred in denying their motions for funds to retain a social psychologist to assist defense counsel during jury selection. Pursuant to G.S. § 7A-450(b), defendants, as indigents, were entitled to counsel and other necessary expenses of representation at State expense. The defendants here made no showing that there was a reasonable likelihood that a social psychologist would materially assist in the preparation of their defenses or that they would not receive a fair trial without a social psychologist's aid. Absent such a showing, we can find no error. *State v. Brown*, 306 N.C. 151, 293 S.E. 2d 569, *cert. denied*, --- U.S. ---, 74 L.Ed. 2d 642 (1982); *State v. Williams*, 305 N.C. 656, 292 S.E. 2d 243, *cert. denied*, --- U.S. ---, 74 L.Ed. 2d 622 (1982), *reh. denied*, --- U.S. ---, 103 S.Ct. 839 (1983); *State v. Parton*, 303 N.C. 55, 277 S.E. 2d 410 (1981).

[3] Each defendant now questions the jury selection process, although neither requested an individual voir dire, presumably based on our holding in *Oliver I*. Nor did either defendant object, during the jury voir dire, to the excusal of any juror. Defendant Oliver contends that no State interest justifies the systematic exclusion of jurors who would never vote for the death penalty and

each defendant argues that these jurors' exclusion denied him his rights to due process and to a trial by a jury drawn from a representative, fair cross-section of the community. We have repeatedly rejected these arguments and reject them here. *State v. Kirkley,* 308 N.C. 196, 302 S.E. 2d 144 (1983); *State v. Brown,* 306 N.C. 151, 293 S.E. 2d 569; *State v. Pinch,* 306 N.C. 1, 292 S.E. 2d 203, *cert. denied,* --- U.S. ---, 74 L.Ed. 2d 622 (1982), *reh. denied,* --- U.S. ---, 103 S.Ct. 839 (1983); *State v. Williams,* 305 N.C. 656, 292 S.E. 2d 243; *State v. Oliver,* 302 N.C. 28, 274 S.E. 2d 183; *State v. Avery,* 299 N.C. 126, 261 S.E. 2d 803 (1980); *State v. Cherry,* 298 N.C. 86, 257 S.E. 2d 551, *cert. denied,* 446 U.S. 941 (1979).

Both defendants contend that the jury selection violated the mandate of *Witherspoon v. Illinois,* 391 U.S. 510, 522, 20 L.Ed. 2d 776, 784-85 (1968), that "a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction." Defendants now argue that the State did not question veniremen concerning their capital punishment views with sufficient specificity or clarity, contending that thirty-three potential jurors were excused for cause based upon answers elicited only by the State and not elicited by either of the defendants or the trial court. We conclude from our examination of the record that each of the thirty-three jurors challenged and excused for cause made it "unmistakably clear . . . that they would *automatically* vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before them. . . ." *Id.* at 522, 20 L.Ed. 2d at 785, n. 21 (emphasis in original). *See State v. Kirkley,* 308 N.C. 196, 302 S.E. 2d 144; *State v. Pinch,* 306 N.C. 1, 292 S.E. 2d 203; *State v. Oliver,* 302 N.C. 28, 274 S.E. 2d 183; *State v. Johnson,* 298 N.C. 355, 259 S.E. 2d 752 (1979); *State v. Cherry,* 298 N.C. 86, 257 S.E. 2d 551; *State v. Britt,* 288 N.C. 699, 220 S.E. 2d 283 (1975); *State v. Monk,* 286 N.C. 509, 212 S.E. 2d 125 (1975).

Defendants further contend that the lack of an individual voir dire and the questioning of jurors in front of their fellow veniremen allowed jurors themselves to determine, through the answers others gave to the State's patterned questions, whether they would sit on the jury, thus producing a jury comprised of persons who were of the opinion that the death penalty was nec-

essary. This "domino" effect has been argued to this Court repeatedly, and we have rejected it repeatedly. We do so again. *See State v. Brown,* 306 N.C. 151, 293 S.E. 2d 569; *State v. Oliver,* 302 N.C. 28, 274 S.E. 2d 183; *State v. Taylor,* 298 N.C. 405, 259 S.E. 2d 502 (1979); *State v. Barfield,* 298 N.C. 306, 259 S.E. 2d 510 (1979), *cert. denied,* 448 U.S. 907, reh. denied, 448 U.S. 918 (1980). The record here shows that the excused jurors in question admitted that they would not vote for or recommend the death penalty under any circumstance. Their exclusion was not improper, and we find no error.

### 2.  PHOTOGRAPHS

**[4]** Defendants contend that the trial court erred in admitting into evidence photographs of the deceased victims. Without objecting at trial, they now argue that the photographs were improperly shown to the jury and improperly used during the prosecutor's closing argument. It is the defendants' contention that the State's use of the photographs exceeded the use for which they were admitted, namely, to illustrate the testimony of the S.B.I. crime scene expert, and that the photographs were irrelevant to sentencing, inflammatory, and highly prejudicial. They rely on *State v. Johnson,* 298 N.C. 355, 259 S.E. 2d 752; and *State v. Mercer,* 275 N.C. 108, 165 S.E. 2d 328 (1969).

We disagree with the defendants' interpretation of our precedents and find no error in either the trial court's admission into evidence of the photographs or the State's use of the photographs during closing argument.

In *State v. Mercer,* 275 N.C. 108, 165 S.E. 2d 328, this Court stated that a new trial may be warranted when an excessive number of photographs illustrating the same scene and with no additional probative value is used to inflame the jury. Defendants here have failed to show that the four photographs in question, two of each of the victims' bodies, constituted an excessive number, were repetitive depictions of the same scene, had no additional probative value, or were inflammatory. These four photographs depicted for the jury the manner in which the two victims were shot, the precise location of the gunshot wounds, and the scene of the Watts' murder behind the counter in the store.

Defendants' reliance on *Johnson* is also misplaced. There we found improper the admission into evidence of photographs depicting the mutilated, dismembered body of the victim when the defendant was not responsible for the mutilation or dismemberment. However, we found proper the admission of a photograph showing the defendant's instrument of strangulation around the victim's neck. The photographs in the case sub judice are not gory and gruesume as were those in *Johnson*. They are otherwise relevant to show the circumstances of the two murders, an especially appropriate consideration for the jury in reaching its capital sentence recommendation. *Gregg v. Georgia*, 428 U.S. 153, 49 L.Ed. 2d 859 (1976).

On remand from the United States Supreme Court, *Godfrey v. Georgia*, 446 U.S. 420, 64 L.Ed. 2d 398 (1980), the Georgia Supreme Court held that the resentencing court properly admitted photographs similar to those at issue here.

In order to enable the resentencing jury to fulfill its responsibility, the state is authorized to offer evidence for the purpose of putting the jury in a position of having at least as much knowledge of the circumstances as the original jury which heard both the guilt-innocence and sentencing phases of the trial. The photographs represented the crime scene and the victims' injuries, and the defendant may not prevent the jury from viewing them.

*Godfrey v. State*, 248 Ga. 616, 622, 284 S.E. 2d 422, 428 (1981), *cert. denied*, 456 U.S. 919 (1982), *reh. denied*, --- U.S. --- (1983).

We, too, find that it is not improper for a jury considering only capital resentencing to view photographs which they would have seen had they also determined the defendants' guilt. Nor do we find it improper that the State used the photographs of the victims' bodies and the crime scene during closing argument. *See Smith v. State*, 419 So. 2d 563 (Miss. 1982), *cert. denied*, --- U.S. ---, 103 S.Ct. 1449 (1983) (proper use of photographic slides during State's capital sentencing closing argument). The prosecutor used the photographs to argue the facts and circumstances of the murder so that the jury might reach a proper sentence recommendation. The facts and circumstances, including the photographs which illustrated them, were properly admitted into

evidence and the prosecutor could argue all reasonable inferences to be drawn therefrom.

### 3. SUMMARY OF EVIDENCE

[5]   For the first time, defendants now object to the trial court's recapitulation of the evidence and assign error to the trial court's failure to state to the jury that the evidence showed that Allen Watts was unconscious immediately upon being shot. There was testimony at the sentencing hearing to this effect in the form of the opinion of Dr. Andrews, the examining pathologist. Defendants failed to bring the omission to the trial court's attention thereby waiving their objection on appeal. *State v. Abernathy*, 295 N.C. 147, 244 S.E. 2d 373 (1978). Our review is therefore limited to plain error.

The trial court "is not required to state the evidence except to the extent necessary to explain the application of the law to the evidence." G.S. § 15A-1232. Although he need not recapitulate all of the evidence, *State v. Alston*, 294 N.C. 577, 243 S.E. 2d 354 (1978), the trial judge is required to instruct on all material or substantive features of a case. *State v. Ward*, 300 N.C. 150, 266 S.E. 2d 581 (1980).

Defendants argue that the fact that Watts was unconscious was material with regard to whether the murder of Watts was especially heinous, atrocious or cruel within the meaning of G.S. § 15A-2000(e)(9). This argument fails in light of the State's reliance, in establishing this aggravating factor, on the evidence that Watts begged for his life. The prosecutor, in fact, never argued that Watts might have been conscious prior to his death, although there was evidence to support such an argument.[1] Both defendants, however, argued that Watts was "unconscious and . . . didn't suffer after the shot was fired." Thus, the failure of

---

1. Mitchell Ivey arrived at the scene shortly after the murders. He went into the store, looked around, and when he did not see Mr. Watts, he assumed he was outside. As he began to leave, he "heard something groan," and when he looked behind the counter, he saw Watts. Fanny Lawson arrived in response to an emergency ambulance call. She observed Mr. Hodge and then went into the store after being told there was another victim inside. She testified, "I ran in, and as I went in at the front door, the cash register was on the left, . . . and I had to go around a bar back there to get back to where he was, and as I started around, I heard him make a fuss, and I ran back out to where Mr. Hodge and my partner was, and I picked up by jump kit and I went back in. . . ."

the trial court to remind the jury of the pathologist's opinion that Watts was unconscious does not constitute plain error. This testimony was before the jury and was argued to the jury.

### 4. *ENMUND* ISSUE

[6]   Both defendants argue a failure to comply with the recent United States Supreme Court decision in *Enmund v. Florida*, 458 U.S. 782, 73 L.Ed. 2d 1140 (1982). In that case, it was held that a sentence of death was excessive under the cruel and unusual punishment clause of the eighth amendment when it was imposed on a defendant who did not personally kill the victims; who was not actually present during the killings; and who did not intend that the victims be killed. In so holding, the court emphasized (1) the absence of any evidence to show that Enmund personally intended to kill the victims, and (2) the need for the sentence to be based on the individualized character and conduct of the accused.

Defendant Moore contends that there was significant circumstantial evidence to show that defendant Oliver actually shot Mr. Watts, apparently because the murder weapon was purchased by Oliver. Defendant Oliver contends that there was no direct evidence that he took part in the killing of Allen Watts, but that the evidence showed that defendant Moore personally shot Watts. These contentions are without merit since all the evidence clearly showed that Moore killed Watts, that Oliver killed Hodge, and that Oliver was present and supplied the pistol for both killings, obviously intending that lethal force be employed. Moore was overheard in jail bragging that he killed Watts and that he had killed whites before. The jury failed to find the mitigating factor, as to either defendant, that he was only an accomplice with relatively minor participation. We therefore find no violation of the *Enmund* rule. We do, however, direct the attention of the bench and the bar to our recent decision in *State v. Stokes*, 308 N.C. 634, 304 S.E. 2d 184 (1983), discussing this issue and recommending a procedure for complying with the *Enmund* rule.

### 5. *STRICKLAND* ISSUE

Defendants contend that the North Carolina capital murder statutory scheme is unconstitutional under *Roberts v. Louisiana*, 428 U.S. 325, 49 L.Ed. 2d 974 (1976); and *Furman v. Georgia*, 408 U.S. 238, 33 L.Ed. 2d 346 (1972), in that it permits subjective

discretion and discrimination in imposing the death penalty. Under this assignment of error, defendants challenge the requirement for the automatic submission of the lesser included offense of second degree murder whenever a defendant is tried for first degree murder on the theory of premeditation and deliberation. *See State v. Harris,* 290 N.C. 718, 228 S.E. 2d 424 (1976). The defendants in this case were charged and convicted of first degree murder under the felony murder theory, thus the *Harris* rule, which we recently overruled in *State v. Strickland,* 307 N.C. 274, 298 S.E. 2d 645 (1983), was not applicable to their cases. Furthermore, this issue is not properly before this Court as it was not raised at the guilt determination phase of the trial, in the original appeal, or during either sentencing hearing.

    6.  INSTRUCTIONS

        (a) Aggravating factors

           i. Heinous, atrocious or cruel

**[7]** Defendants next contend that the trial judge committed reversible error by instructing the jury that it could find as an aggravating factor that the murder of Allen Watts was "especially heinous, atrocious, or cruel." G.S. § 15A-2000(e)(9). Defendants did not object to the submission of this factor at trial.

This question was presented and decided against the defendants in *Oliver I.* In that case, Justice Exum, after reviewing those cases interpreting the language of G.S. § 15A-2000(e)(9) concluded that "[a]t least one court has determined that the murder of one pleading for mercy may fall within the category of an 'especially heinous' offense. *Lucas v. State,* 376 So. 2d 1149 (Fla. 1979)." *State v. Oliver,* 302 N.C. at 60, 274 S.E. 2d at 203. Significantly, Justice Exum pointed out that in *State v. Cherry,* 298 N.C. 86, 257 S.E. 2d 551, a felony murder case, this aggravating factor was submitted and rejected by a jury because "circumstances indicat[ed] that the shooting may not have been intentional, although defendant was threatening the deceased and others with his pistol at the time. . . ." *Id.* at 61, 274 S.E. 2d at 203. Thus, held Justice Exum,

> In the Watts murder cases the state's evidence shows that Watts, after opening his cash register in response to defendants' demands, begged for his life. Watts said, 'Please don't shoot me. Go ahead and take the money.' With Watts

pleading for his life defendant Moore, according to his evidence, mercilessly shot him to death. In our view the jury could find from these circumstances that the murder of Watts was especially heinous, atrocious or cruel. This aggravating circumstance was appropriately submitted in the Watts cases.

*Id.,* 274 S.E. 2d at 204.

We emphasize that this assignment of error raises only the question of whether the aggravating factor that the Watts murder was "especially heinous, atrocious, or cruel" was properly submitted to the jury given the circumstances of the murder. *Cherry* represents a clear indication that a jury, under proper instruction, remains free to reject this factor and will do so when appropriate. Of equal significance pointing to the effectiveness of the built-in safeguards implicit in our capital punishment statute is the result reached by the jury in *State v. Atkinson,* 298 N.C. 673, 259 S.E. 2d 858 (1979). In that case defendant was convicted of first degree murder on a felony-murder theory. Submitted at the sentencing phase, and found by the jury, were the aggravating factors that the murder (1) was especially heinous, atrocious, or cruel and (2) was committed in the course of a robbery. The jury found one mitigating factor but further found that although the mitigating circumstance was insufficient to outweigh the aggravating circumstances, the latter *were not sufficiently substantial to call for the imposition of the death penalty.*

Although we could justifiably rely on our determination of this issue in *Oliver I,* we nevertheless review our earlier position and hold that this factor was improperly submitted for jury consideration as to defendant Oliver, but reaffirm our position as to its admission as to defendant Moore.

In support of the aggravating factor against Oliver that the crime was "especially heinous, atrocious, or cruel," the State submitted evidence, at the guilt phase and at resentencing, of defendant Moore's subsequent statement to Lewis that Allen Watts had pleaded, "Please don't shoot me." As the statement had no bearing on defendant Oliver's guilt, any error in its admission at the guilt phase was harmless. We agree that the use of this statement against defendant Oliver to support the aggravating factor of heinous, atrocious, or cruel was erroneous. Under our rules of

evidence, the acts and declarations of any one conspirator, *made while the conspiracy exists*, and in furtherance of it, are admissible against other conspirators. 2 Brandis on North Carolina Evidence § 173 (2d rev. ed. 1982). In *State v. Covington*, 290 N.C. 313, 325-26, 226 S.E. 2d 629, 639 (1976), Justice Branch, now Chief Justice, wrote:

> When the State shows a *prima facie* conspiracy, the declarations of the co-conspirators in furtherance of the common plan are competent against each of them. *State v. Crump*, 280 N.C. 491, 186 S.E. 2d 369; *State v. Hairston*, 280 N.C. 220, 185 S.E. 2d 633. This is so even where the defendants are not formally charged with a criminal conspiracy. *State v. Absher*, 230 N.C. 598, 54 S.E. 2d 922. A criminal conspiracy is the unlawful conference of two or more persons in a scheme or agreement to do an unlawful act or to do a lawful act in an unlawful way.

However, "a declaration made before the conspiracy was formed, or after consummation of its object, is not admissible against the other conspirators. . . ." 2 Brandis on North Carolina Evidence § 173; Annot., 4 A.L.R. 3d 671 (1965). As Moore's statement to Lewis concerning what Watts said prior to his death was made after the murder took place, the statement was inadmissible against Oliver. Thus, while this statement was properly considered at sentencing repecting Moore's culpability for the Watts murder, it was improperly considered in Oliver's case. Without this evidence we find a "doubtful case" to support the submission of this aggravating factor with respect to defendant Oliver. *See State v. Oliver*, 302 N.C. at 61, 274 S.E. 2d at 204 (insufficient evidence to support this factor in the Hodge murder); *see also State v. Hamlette*, 302 N.C. 490, 276 S.E. 2d 338 (1981).

Turning then to the submission of the aggravating factor of heinous, atrocious, or cruel in defendant's Moore's case, we hold that on the facts before us, there was sufficient evidence to submit this factor for jury consideration. Based on *Godfrey v. Georgia*, 446 U.S. 420, 64 L.Ed. 2d 398, defendant Moore suggests that this Court interpret G.S. § 15A-2000(e)(9) to require the infliction of physical injury prior to death in order to support the submission of this factor. We decline to limit our interpretation of an especially heinous, atrocious, or cruel murder to one which in-

volves only physical injury or torture prior to death or to physical injury alone in any event.

We are cognizant of the fact that G.S. § 15A-2000(e)(9) must not be viewed as a "catchall" provision submitted when there is no evidence of other aggravating factors. *Godfrey v. Georgia,* 446 U.S. 420, 64 L.Ed. 2d 398; *State v. Martin,* 303 N.C. 246, 278 S.E. 2d 214, *cert. denied,* 454 U.S. 933, *reh. denied,* 454 U.S. 1117 (1981). In the present case, other aggravating factors were properly submitted and found.

In North Carolina, the submission of the aggravating factor that the murder was "especially heinous, atrocious, or cruel" has been approved in the following cases: *State v. Brown,* 306 N.C. 151, 293 S.E. 2d 569 (two victims, whose bodies were grossly mutilated, died as the result of multiple stab wounds); *State v. Pinch,* 306 N.C. 1, 292 S.E. 2d 203 (defendant, through the execution of a deliberate plan and with a grin on his face, shot two victims, one of whom pleaded for his life); *State v. Smith,* 305 N.C. 691, 292 S.E. 2d 264, *cert. denied,* --- U.S. ---, 74 L.Ed. 2d 622 (1982) (in an ordeal lasting several hours in extremely cold weather, defendant kidnapped, robbed, and raped his victim prior to his deliberate and senseless murder of her by striking her on the head with a cinderblock); *State v. Rook,* 304 N.C. 201, 283 S.E. 2d 732 (1981), *cert. denied,* 455 U.S. 1038 (1982) (defendant beat his victim, hit her with a tire tool, deliberately and carefully cut her with a knife, raped her, ran over her with a car, and then left her alone to die); *State v. Martin,* 303 N.C. 246, 278 S.E. 2d 214 (during a twenty-five minute ordeal, as defendant's wife continually pled for her life, defendant fired shots at her, one of which severed her spine, dragged her across a room, threw her against a wall, hit her on the head and face repeatedly with his fist and pistol, and fired shots at her in the presence of her small son prior to shooting her to death); *State v. Silhan,* 302 N.C. 223, 275 S.E. 2d 450 (1981) (the victim was stripped from the waist down, had her hands tied behind her back and her brassiere tied around her neck, was marched at knife-point into nearby woods, and was forced to lie on the ground while she was beaten and murdered); *State v. McDowell,* 301 N.C. 279, 271 S.E. 2d 286 (1980), *cert. denied,* 450 U.S. 1025, *reh. denied,* 451 U.S. 1012 (1981) (with a two-foot machete, defendant entered the victim's house, threatened to rape the victim's fourteen year old sister, and struck at

the four year old victim while she was in her sister's arms, wounding her nine times); *State v. Johnson,* 298 N.C. 355, 259 S.E. 2d 752 (defendant offered money to a ten year old boy for sex, and upon the boy's refusal, strangled him to death with a nylon fish stringer); *State v. Barfield,* 298 N.C. 306, 259 S.E. 2d 510 (defendant placed arsenic in the victim's tea and beer for fear that the victim would report the defendant's forgery of checks drawn on the victim's bank account); *State v. Johnson,* 298 N.C. 47, 257 S.E. 2d 597 (1979) (defendant tried to strangle his victim, rendered her unconscious, sexually molested her, and realizing she was not dead, stabbed her to death); *State v. Goodman,* 298 N.C. 1, 257 S.E. 2d 569 (1979) (the victim was shot several times and cut repeatedly with a knife, and while still alive was placed in the trunk of a car for several hours during which time he begged for his life, was driven to another county, taken out of the trunk, placed on the ground with his head on a rock, and shot twice through the head).

As can be seen from a review of these cases approving the submission of G.S. § 15A-2000(e)(9), the crimes range from the most gruesome and violent, focusing on the general dehumanizing aspects of the crime or on the physical agony of the victims to those which are less violent but nonetheless calculated to leave the victim in his last moments as a sentient being, aware but helpless to prevent impending death, focusing on the deliberate, intentional and senseless aspect of a conscienceless and pitiless murder inflicting psychological torture.

The murder of Allen Watts falls into the second category and on its facts is similar to *State v. Pinch,* 306 N.C. 1, 292 S.E. 2d 203, a case decided after *Oliver I.* In *Pinch,* the defendant raised his shotgun and pointed it at one victim who stated " 'I will go down laughing.' Without saying a word, defendant shot him in the chest." Defendant then turned to the second victim who said, "don't shoot me," "no, not me." Defendant, with " 'a sort of grin' on his face," shot anyway, and shortly afterwards commented that he had just " 'blown away' two dudes." *Id.* at 6, 292 S.E. 2d at 211. At trial, the State argued that the murders were especially heinous because defendant committed them for sport and amusement. The State also contended that the murder of the second victim, Ausley, was particularly despicable because defendant shot him in cold blood as he begged and pleaded for his life. In

addressing the issue of whether this evidence supported the existence of the aggravating factor that the murders were especially heinous, atrocious, or cruel, this Court found that "[t]he evidence showed that defendant carefully executed a deliberate and premeditated plan for murder." With respect to the second victim, Ausley, the murder "was merciless and conscienceless in that defendant shot him as he begged and pleaded for his life. Defendant seemed to enjoy the killings, and he showed no remorse for what he had done at that time. In fact, defendant callously evaluated his conduct in his subsequent announcement to his companions that he had 'just blown away two dudes.' " *Id.* at 35, 292 S.E. 2d at 228.

In the case sub judice, the evidence justifies a conclusion that the murder of Allen Watts, committed in total disregard for the value of human life, was a senseless murder, executed in cold blood as the victim pleaded "please don't shoot me"; and that defendant showed no remorse. In fact, defendant Moore later laughingly boasted to his fellow inmates that he pointed the gun at Watts who begged not to be shot and offered defendant more money, and that defendant "kind of liked the idea of it." As recently stated in *Magill v. State,* 428 So. 2d 649, 651 (Fla. 1983), "[i]t is not merely the specific and narrow method in which a victim is killed which makes a murder heinous, atrocious, and cruel; rather, it is the entire set of circumstances surrounding the killing." We therefore hold with respect to defendant Moore's murder of Watts that under the peculiar circumstances of this case, including but not limited to the victim's imploring "please don't shoot me," the evidence was sufficient to support the submission to the jury of the factor that the murder was especially heinous, atrocious, or cruel.[2]

[8] Defendants further contend that the trial judge improperly instructed on the aggravating factor that the Watts' murder was especially heinous, atrocious, or cruel. We agree. The trial court instructed as follows:

2. It would seem, moreover, that the submission of this factor alone may not have been critical to the jury's decision to impose the death sentence. In *Oliver I* we held that the heinous, atrocious, or cruel aggravating factor was erroneously submitted as to defendant Oliver in the Hodge murder. Nevertheless, at resentencing, in the *absence* of this factor, Oliver again received a death sentence for that murder.

In this context, heinous means extremely wicked or shocking-ly evil. Atrocious means outrageously wicked and vile; and cruel means to inflict a high degree or (sic) pain. You will notice that that says 'especially heinous, atrocious or cruel.' All three do not have to exist.

Cruel means designed to inflict a high degree or (sic) pain, with utter indifference to, or even an enjoyment of the suffering of others. It is not enough that the murder be heinous, atrocious or cruel, as I have just defined these terms, this murder must have been especially heinous, atrocious or cruel.

Not every murder is especially, so for this murder to have been especially heinous, atrocious or cruel, any brutality which was involved must have been exercised — must have exceeded that which is normally present in any killing. The murder must have been a conscienceless or pitiless crime, or one which was unnecessarily tortuous to the victim.

If you find from the evidence, beyond a reasonable doubt that this murder was an especially heinous, atrocious or cruel, *such as occurring while a man is begging for his life*, you would find this aggravating circumstance, and would so indicate by having your moderator write 'Yes' as an answer to number three.

(Emphasis added.)

As a basis for this assignment of error, defendants argue that by this instruction the jury was not correctly or adequately guided in its determination of this factor and that inserting the words "such as occurring while a man is begging for his life" constituted an expression of opinion in violation of G.S. § 15A-1222 and § 15A-1232. Defendants also point to the fact that Oliver's attorney was not permitted to argue to the jury that one of the factors it could consider in determining whether the murder was especially heinous, atrocious, or cruel was "whether or not there was some kind of torture involved in the murder of Mr. Watts." As we have held that the trial court improperly submitted the aggravating factor that the Watts' murder was especially heinous, atrocious, or cruel in Oliver's case, our review of this issue pertains only to defendant Moore.

We first note that by his own instruction to the jury, the trial judge acknowledged that one factor for jury consideration in determining whether a murder is especially heinous, atrocious, or cruel is whether some kind of torture was involved. The trial judge properly stated that "[t]he murder must have been a conscienceless or pitiless crime, or one which was *unnecessarily tortuous to the victim.*" (Emphasis added.) Thus it was error to prohibit defense attorney's argument to this effect.

The more serious error, and one which entitles defendant Moore to a new sentencing hearing for the Watts' murder, is the trial judge's statement essentially defining an especially heinous, atrocious, or cruel murder as one "occurring while a man is begging for his life." We have held that evidence of a victim's begging for his life is, like torture, one factor for jury consideration in determining whether a murder is especially heinous, atrocious, or cruel. However, it is not necessarily a determinative factor. Nor does this factor alone always necessitate a finding that a murder was especially heinous, atrocious, or cruel. The facts of this case do not support an instruction that this murder was especially heinous, atrocious, or cruel based solely on evidence that the victim begged for his life. Rather, on the evidence in this case, the trial judge should have instructed the jury substantially as follows:

Members of the jury, there is evidence in this case that tends to show that Mr. Watts was begging for his life at the time he was killed. What the evidence does show is, of course, for you to determine. If the State has satisfied you beyond a reasonable doubt that Mr. Watts was begging for his life at the time he was killed, you may consider that evidence, along with all the other evidence in the case, in determining whether the killing was especially heinous, atrocious, or cruel.

ii. Avoiding arrest

[9] Defendants next contend that the trial court erred in submitting as an aggravating factor that the crime was motivated by a desire to avoid detection and apprehension. G.S. § 15A-2000(e)(4). Each defendant now alleges that G.S. § 15A-2000(e)(4) is unconstitutionally vague as applied and that the alleged error deprived them of their constitutional rights.

This Court has approved the submission of G.S. § 15A-2000 (e)(4) to the jury when there is evidence that one of the purposes behind the killing was the desire by the defendant to avoid detection and apprehension for some underlying crime as opposed to submitting it only if the killing took place *during* an escape from custody or lawful arrest situations. In *State v. Goodman*, 298 N.C. 1, 257 S.E. 2d 569, we held that evidence of a death is alone insufficient for submission to the jury of this factor and that such evidence must be coupled with "evidence from which the jury can infer that at least one of the purposes motivating the killing was defendant's desire to avoid subsequent detection and apprehension for his crime." *Id.* at 27, 257 S.E. 2d at 586. *See State v. Hutchins*, 303 N.C. 321, 279 S.E. 2d 788 (1981); *State v. Barfield*, 298 N.C. 306, 259 S.E. 2d 510.

The evidence supports the submission of this aggravating factor with respect to defendant Moore in the Watts' murder. Moore was credited with saying "you would have to be crazy to leave any witnesses." Oliver's act in murdering Hodge and attempting to murder Hodge's seven year old grandson, the only other witness, justifies submission of this aggravating factor in Oliver's sentence with respect to Hodge. *See State v. Goodman*, 298 N.C. 1, 257 S.E. 2d 569.

However, relying on the same reasoning which resulted in our finding error in the submission of G.S. § 15A-2000(e)(9) (heinous, atrocious, or cruel) on Oliver's individual culpability for the Watts' murder, we agree, for the same reason, that the trial court committed error in submitting G.S. § 15A-2000(e)(4) (killing to avoid detection) upon Oliver's conviction of the murder of Allen Watts, the store attendant. We noted earlier that the only evidence justifying the submission of G.S. § 15A-2000(e)(9) was the fact that Moore had stated to Johnny Lee Lewis that Watts begged for his life prior to being murdered. The only evidence to justify the submission of G.S. § 15A-2000(e)(4) was Moore's statement to Lewis that "you would have to be crazy to leave any witnesses." This, too, was inadmissible hearsay against Oliver, spoken after the conspiracy had been completed and out of the presence of Oliver. Thus, we hold, as we did in our discussion of G.S. § 15A-2000(e)(9), that the use of Moore's statement against Oliver to support the aggravating factor (G.S. § 15A-2000(e)(4)) was improper. Without this statement, there was only the weak-

est evidence upon which the trial court could have predicated the submission of G.S. § 15A-2000(e)(4) as to Oliver's individual culpability in the murder of Watts. That is, the evidence that Oliver intended to eliminate Watts as a witness, given the clear indication that Moore was the "trigger man" in that murder is insufficient to support the submission of this factor.

### iii. Pecuniary gain

[10] Defendants next contend that the submission of the aggravating factor "pecuniary gain," G.S. § 15A-2000(e)(6), violated the double jeopardy clause and otherwise denied these defendants their constitutional rights. No objection was made at trial. They now argue that the submission of this aggravating factor was improper as substantially it was a submission of the underlying felony of armed robbery, the underlying felony which merged with the killings to support the first degree murder verdicts.

This Court in *Oliver I* specifically held that double jeopardy does not preclude the submission of pecuniary gain when the underlying felony is armed robbery. This Court has reiterated its position in *State v. Taylor*, 304 N.C. 249, 283 S.E. 2d 761 (1981), and *State v. Irwin*, 304 N.C. 93, 282 S.E. 2d 439 (1981). As Justice Exum stated in *Oliver I*, "[t]he hope of pecuniary gain provided the impetus for the murder of both Watts and Hodge." 302 N.C. at 62, 274 S.E. 2d at 204. Defendants advance no reason for this Court to abandon its prior rulings on this issue.

Nor do we find that G.S. § 15A-2000(e)(6) is unconstitutionally vague. While the vagueness of this factor has not been specifically ruled on, this Court has repeatedly rejected broadside assertions that all the aggravating factors in G.S. § 15A-2000(e) are vague and overlapping. *See State v. Rook*, 304 N.C. 201, 283 S.E. 2d 732; *State v. Barfield*, 298 N.C. 306, 259 S.E. 2d 510; *State v. Goodman*, 298 N.C. 1, 257 S.E. 2d 569.

### (b) Guilt determination

[11] Again, without having objected at trial, the defendants now complain that the prosecutor repeatedly asked the jury during voir dire if they understood that the question of guilt had already been established. They further complain that the trial court charged the jury that the defendants had already been found guilty of the murders in question.

It is uncontroverted that the purpose of the resentencing hearing was solely for sentencing. The guilt of these two defendants had been conclusively determined and affirmed on appeal. *See Oliver I.* The case was not before the jury for a finding of guilt or innocence. It is defendant's contention, however, that barring the jury from redetermining guilt or innocence was tantamount to limiting the jury's consideration of evidence in mitigation. We do not agree. The jury was simply precluded from determining guilt or innocence. Thus, the instructions and comments to the jury that its function was punishment, not a determination of guilt or innocence, was in all respects proper.

(c) Burden on mitigating factors

**[12]** Defendants contend that the trial court erred in placing the burden on the defendants to prove each mitigating circumstance by a preponderance of the evidence. Defendants did not object to this instruction at trial. This Court has repeatedly ruled that the burden of persuasion as to the existence of mitigating circumstances is on the defendant. *See State v. Kirkley,* 308 N.C. 196, 302 S.E. 2d 144; *State v. Brown,* 306 N.C. 151, 293 S.E. 2d 569; *State v. Pinch,* 306 N.C. 1, 292 S.E. 2d 203; *State v. Williams,* 305 N.C. 656, 292 S.E. 2d 243; *State v. Hutchins,* 303 N.C. 321, 279 S.E. 2d 788. There is no reason for this Court to disturb these well-established and well-reasoned precedents.

(d) G.S. § 15A-2000 violative of Eighth Amendment

Defendants contend that North Carolina's death penalty statute, G.S. § 15A-2000, constitutes cruel and unusual punishment, is applied in a discriminatory and subjective manner, and is unconstitutionally vague. This issue has been litigated in this Court on numerous occasions and has been resolved adversely to these defendants. *See State v. Brown,* 306 N.C. 151, 293 S.E. 2d 569; *State v. Pinch,* 306 N.C. 1, 292 S.E. 2d 203; *State v. Barfield,* 298 N.C. 306, 259 S.E. 2d 510. Defendants have advanced no reasoned argument for this Court to disregard its prior decisions.

(e) Sentence recommendation

For the first time both defendants now object to the manner in which the trial court charged the jury concerning how to reach a sentence recommendation. The alleged error was, according to these defendants, charging the jury that if they found aggravat-

ing circumstances existed, and if they found that the aggravating circumstances were sufficiently substantial to warrant imposition of the death penalty, and if the aggravating circumstances outweighed any mitigating circumstances, then the jury must recommend a death sentence. Defendants argue that this instruction constitutes a mandatory imposition of the death penalty. Although defendants concede that the issue has been decided by this Court against them in *State v. Brown*, 306 N.C. 151, 293 S.E. 2d 569; *State v. Pinch*, 306 N.C. 1, 292 S.E. 2d 203, and in cases filed subsequently, defendants ask us to reconsider our decision in light of Justice Stevens' opinion respecting the denial of certiorari in *Pinch*.

In *State v. McDougall*, 308 N.C. 1, 301 S.E. 2d 308 (1983), we addressed this issue in light of Justice Stevens' remarks in *Pinch*, and recommended a new instruction. However, Justice Stevens' concern dealt with whether mitigating circumstances were considered during all stages of the recommendation procedure. Since in these cases now before the Court, no mitigating circumstances were found, the alleged problem, now resolved in *McDougall*, does not arise. The assignment of error is rejected.

(f) Unanimity

[13] Defendants assign as error the trial court's failure to instruct the jury that if all twelve of them failed to agree that a mitigating circumstance existed or did not exist, then they were deadlocked; in failing to instruct the jurors that they need only be unanimous in their finding that mitigating circumstances existed; and in failing to instruct the jury that each juror could decide for himself which mitigating circumstance existed and the weight to be given to each mitgating circumstance.

We approved the instructions as given in *State v. Rook*, 304 N.C. 201, 283 S.E. 2d 732. Furthermore, in *State v. Kirkley*, 308 N.C. at 218, 302 S.E. 2d at 157, we held that "consistency and fairness dictate that a jury unanimously find that a mitigating circumstance exists before it may be considered for the purpose of sentencing." In *Kirkley* defendant argued that the trial judge erred when he instructed the jurors that a mitigating circumstance must be deemed not to exist in the absence of a unanimous agreement on its existence. On this question, we noted that when the sentencing procedure begins, there are no aggravating

or mitigating circumstances deemed to be in existence. "Each circumstance must be established by the party who bears the burden of proof and if he fails to meet his burden of proof on any circumstance, that circumstance may not be considered in that case." *Id.* Thus, we held that the unanimity requirement is only placed upon the finding of whether an aggravating or mitigating circumstance exists. We find no error here.

### 7. PROSECUTORIAL MISCONDUCT

Defendants contend that the prosecutor continually injected "prejudice, irrelevant, and inflammatory matters into the resentencing trial." Inasmuch as we have yet to find error in defendant Oliver's case for the murder of Dayton Hodge, and as these issues may recur at resentencing on the Watts' murder, we will discuss each of these contentions. As a basis for this assignment of error, defendants point to the following instances of alleged prosecutorial misconduct:

1. During jury voir dire, the prosecutor asked one juror whether she had the "backbone" to be part of the machinery to bring about the death penalty, and asked another juror if she had the "intestinal fortitude" to be part of this machinery.

2. The prosecutor elicited testimony that Lewis was being held in protective custody.

3. In his closing argument, the prosecutor:

   a. Misstated the evidence that Mr. Watts had been working sixteen hours a day to build up his business.

   b. Misstated the evidence that Lewis had been responsible for the recovery of the gun.

   c. Improperly argued that the burden was on defendants to satisfy the jury that there "is something about these defendants of a redeeming value that gives rise to the mitigation that will cause you to drop it down to life imprisonment."

   d. Argued "divine law" to support the death penalty.

   e. Argued that too much attention was paid to the rights of defendants and not enough to the rights of the victims and argued the reality of the deaths of the two victims.

We will discuss each of defendants' contentions in the order presented above, noting at the outset that

> prosecutorial statements are not placed in an isolated vacuum on appeal. Fair consideration must be given to the context in which the remarks were made and to the overall factual circumstances to which they referred. Moreover, it must be remembered that the prosecutor of a capital case has a duty to pursue ardently the goal of persuading the jury that the facts in evidence warrant imposition of the ultimate penalty.

*State v. Pinch,* 306 N.C. at 24, 292 S.E. 2d at 221-22.

[14] Defendants argue that in asking one juror if she had the "backbone" to impose a sentence of death, and another juror if he had the "intestinal fortitude," the prosecutor was "telegraphing" to the other jurors that only courageous people return a death penalty. Taken in context, the argument is neither supportable nor logical.

The first juror, Miss Jones, had stated that she believed in capital punishment as a necessary law, but she was "not quite sure" if she "could be a part of it." The prosecutor then responded, "What you are saying is that you believe it's necessary law, but you just don't know whether you have the backbone to be part of the machinery to bring it about; is that right?" The "intestinal fortitude" statement was made in the same context. The inquiry, reduced to layman's terms, was whether these jurors had the strength of their convictions to be able to return a sentence of death if the evidence required such a verdict. The statements were made not to badger or intimidate these witnesses, but rather to determine, in light of their equivocation, whether they could comply with the law. As such, these comments could be viewed as favorable, rather than unfavorable to defendants' position as they tended to encourage jurors who equivocated on imposition of the death penalty to serve. Defendants fail to show prejudice.

[15] Defendants next argue that it was improper for the prosecutor to question Johnny Lee Lewis concerning his being in protective custody. Lewis was permitted to testify on direct that he was being held in protective custody, and to explain that protec-

tive custody "means I have to be kept away from the regular population of inmates because of me testifying."

We find nothing in this answer to suggest, as defendants contend, that Lewis was in protective custody because of threats which Moore had made against him. While evidence in the original trial record shows that the witness Lewis had, in fact, been threatened by Moore, the prosecutor, at resentencing, did not place this information before the jury. Instead he allowed Lewis' answer to stand without comment.

We agree that the testimony concerning Lewis' being in protective custody was more properly the subject for re-direct following defense counsel's cross-examination of Lewis when, in an effort to show interest, this witness was asked whether he was receiving special treatment in return for his willingness to testify. The prosecutor simply anticipated that questions concerning the special treatment Lewis was receiving would be asked on cross. Defendant has shown no prejudice by the erroneous admission of this testimony on direct examination, however, because the legitimate purpose for which the testimony was admitted was established during cross-examination. *See State v. Rothwell,* 308 N.C. 782, 303 S.E. 2d 798 1983).

We now examine the prosecutor's closing argument and defendants' multifaceted allegations of prosecutorial misconduct with respect to that argument. No objection was made to any portion of this argument at the resentencing hearing. Upon failure to object to statements made during closing argument, the standard we employ is whether the statements amounted to such gross impropriety as to require the trial judge to act *ex mero motu. State v. Craig,* 308 N.C. 446, 302 S.E. 2d 740 (1983); *State v. Kirkley,* 308 N.C. 196, 302 S.E. 2d 144.

With respect to the first alleged "misstatement," that Watts worked sixteen hours a day to build up his business, the prosecutor's embellishment can only be described as innocuous. The evidence supports, by inference, that Allen Watts worked long hours in his store. With respect to the second alleged "misstatement," that Johnny Lee Lewis was responsible for the recovery of the murder weapon, the record discloses that a search of the area south of the canal, where defendants were found, did not uncover the gun; Moore told Lewis that he hid the gun "across the

canal, partially buried." Officers then searched the canal area; the gun was found on the north side of the canal after Lewis had spoken to the authorities. The evidence fully supports the inference that Lewis' information led to the recovery of the gun. A prosecutor may argue the evidence and any inferences to be drawn therefrom. *State v. Monk,* 286 N.C. 509, 212 S.E. 2d 125.

[16] We agree with the defendants that the prosecutor's statement with reference to their burden to "drop" the sentence to life imprisonment was, if viewed out of context, erroneous. When viewed in the context in which it was made, we cannot say that the statement constitutes prejudicial error.

The prosecutor began his final argument to the jury by reviewing the history of the death penalty in North Carolina. In this context, he stated that the United States Supreme Court had determined the need for "some sort of balancing for the jury, some sort of standard for the jury to follow in determining *whether a particular defendant deserves the death penalty.*" (Emphasis added.) He went on to comment that:

There may be mitigating factors; that is, factors which tend to soften the type of crime that he committed in some way. And because of that we have come up with a list—the State has come up with a list of aggravating factors, factors which the law says aggravates a homicide or murder, and places it in the category where the death penalty is appropriate.

It also lists some mitigating circumstances which you may take into consideration in balancing against the aggravating circumstances.

Following a discussion of the aggravating factors upon which the State intended to rely, the prosecutor made the following comments, including the one to which defendants now object:

Now, that, basically, is the State's side of the case. The defense have presented some evidence to attempt to raise some mitigating circumstances in this case, and I will be very frank with you, I don't quarrel with anything they have put on. What have they put on that would mitigate or soften the affects of the acts of these two defendants on the 12th of December, 1978? The burden is on them, not beyond a reasonable doubt, but the burden is on them by the prepon-

derance of the evidence to satisfy you that there is something about these defendants of a redeeming value that gives rise to the mitigation that will cause you to drop it down to life imprisonment.

The prosecutor then proceeded to work through each of the four steps necessary to reach a recommendation of death, noting at the outset that the jury would be given verdict sheets by the trial judge,

a checklist of standards that you will apply in this case. Some you will apply beyond a reasonable doubt, some you will apply only by the preponderance of the evidence, but you will follow in this logical sequence you will end up with the result at the bottom, Ladies and Gentlemen of the Jury. You will either end up with either death or life, *if you follow the law in these sheets.* (Emphasis added.)

In arguing the substantiality question, the prosecutor stated:

We suggest to you that not one aggravating factor — which is *sufficient to give rise to the death penalty* — not two aggravating factors — which are certainly *sufficient to give rise to the death penalty* — but three separate aggravating factors should have been answered yes. Even if you answer some of these aggravating factors no, all it takes is one, folks, *to give rise to the death penalty.* The State is saying that you should answer that issue yes, that the aggravating factors or factor is *sufficiently substantial to call for the imposition of the death penalty.* (Emphasis added.)

Finally, the prosecutor advised the jury as follows:

Just remember the evidence and reason your way down through the checklists. Don't worry about what the bottom line is going to be, and when you get down there, you will find out what the bottom line will be, and *you will have followed the law* and you will have done justice in this case. (Emphasis added.)

Following the prosecutor's argument, counsel for both defendants worked through each of the four steps necessary to reach a recommendation of death, applying the evidence as they viewed it and asking that the jury recommend sentences of life

imprisonment. The trial judge then reviewed, essentially for the fourth time, the procedure set out in G.S. § 15A-2000, providing the jury with complete, concise, and correct written instructions which left no doubt as to the burden of the State on each issue relating to aggravation; the burden of the defendant as to factors in mitigation; the burden of the State to prove beyond a reasonable doubt that the aggravating circumstances outweighed the mitigating circumstances; and that under all the circumstances of the case the aggravating circumstances are sufficiently substantial to call for the imposition of the death penalty. Under these circumstances it is inconceivable that the jury did not scrupulously apply the law in reaching the recommendation that the defendants be sentenced to death. The inaccuracy of the prosecutor's one statement to the jury, in the context of his entire argument, does not constitute prejudicial error. Furthermore, in the absence of an objection, the statement did not amount to such gross impropriety as to require the trial judge to act *ex mero motu*, or to recall that the statement had been made and later caution the jury to disregard it during his instructions to the jury later that day.

[17] Defendants argue strenuously that the prosecutor's "divine law" argument was prejudicial, inflammatory, and not supported by the evidence. The prosecutor argued that the Bible does not prohibit the death penalty. He quoted portions of scripture to support his statement. He did not suggest that North Carolina's death penalty was "divinely" inspired; he simply stated that it was not inconsistent with scriptures of the Bible.

We first note, with some interest, that defense counsel stated in his closing argument that "[t]he State, again, has picked up on my arguments before. *We have been through this before, and we know pretty much what one is going to argue, and what the other is going to argue.*" [3] With this in mind, we turn to defense counsel's prepared argument:

_____

3. We include this comment not only in reference to the present contention, but also because it clearly reflects that unless a resentencing hearing is conducted in a complete, sterile vacuum, with no human element injected into it, it is not possible to ignore certain facts, *i.e.*, that the defendant has been found guilty by another jury; that a sentencing hearing had been conducted; and that for some reason, the defendant was being resentenced. We are also not unmindful of the fact the between sentencings, time passes; events occur (such as defendant Moore's

There's an Old Testament and New Testament. The New Testament is based on the teachings of Jesus Christ. He teaches us to forgive our trespassers. He teaches us mercy. He teaches us that the only sin that cannot be forgiven is blasphemy against the Church, against the Holy Spirit; that George Moore will not go unpunished if you find a life sentence in this case.

Thus, given defense counsel's anticipated argument that the New Testament teaches forgiveness and mercy, and reading the prosecutor's argument as it was intended, we find nothing, in the absence of objection, that amounts to plain error which would justify reversal.

[18] Finally, we address defendant's argument as to the impropriety of the prosecutor's emphasizing the victims' rights. In support of their argument defendants cite to a number of cases dealing with the guilt/innocence phase of a trial. We find these cases inapposite.

During the guilt phase of a trial, the focus is on guilt versus innocence. Mercy is not a consideration, just as prejudice, pity for the victim, or fear may be an inappropriate basis for a jury decision as to guilt or innocence. Arguments which emphasize these factors are properly deemed prejudicial. *State v. Britt*, 288 N.C. 699, 220 S.E. 2d 283; *State v. Graves*, 252 N.C. 779, 114 S.E. 2d 770 (1960). However, during sentencing, considerations are different. The emphasis is on the circumstances of the crime and the character of the criminal. In *State v. Pinch*, 306 N.C. at 25, 292 S.E. 2d at 222, this Court approved of the prosecutor's remarks concerning the victims and their aspirations and families. This Court stated:

The district attorney was merely reminding the jury that, although it did not know much about him, [the jury] should also carefully consider the value of the victim's life in making its life or death decision about defendant.

We find no error.

behavior while on death row); and these events cannot realistically be ignored if relevant.

State v. Oliver

8. JOINT RESENTENCING

[19] Finally, each defendant contends that his rights to due process and to a particularized and individualized consideration by the jury of the appropriateness of the death penalty in his case were violated by the holding of a joint resentencing trial. Defendants point out that the North Carolina death penalty statute, G.S. § 15A-2000, makes no specific reference to the question of whether co-defendants who are tried and convicted at a joint trial should be sentenced at a joint or separate sentencing trial. Defendants further point out that theirs is the first case in which a death penalty was imposed, an appeal heard, and a subsequent joint resentencing trial held.

Prior to the first trial, the State moved for joinder pursuant to G.S. § 15A-926. Defendant Oliver objected. The issue was not briefed and apparently not argued before this Court in *Oliver I*. That opinion makes no reference to the fact that defendants were convicted and sentenced at a joint trial. Thus, at least by implication, we did not disapprove of the joint trial.

The issue is properly before us by way of defendant Oliver's objection to a joinder. Should we find error in Oliver's case, the error will be equally applicable to defendant Moore. *See State v. Boykin*, 307 N.C. 87, 296 S.E. 2d 258 (1982) (non-complaining co-defendant's case remanded "to prevent manifest injustice" where consolidation of cases was found erroneous). While this assignment of error bears serious consideration and raises important questions under G.S. § 15A-2000, we find no error.

We begin with the general proposition that pursuant to G.S. § 15A-926(b)(2), the State may move and the Court may permit joinder of charges against two or more defendants for the guilt determination phase of a trial:

    a. When each of the defendants is charged with accountability for each offense; or

    b. When, even if all of the defendants are not charged with accountability for each offense, the several offenses charged:

       1. Were part of a common scheme or plan; or

       2. Were part of the same act or transaction; or.

3. Were so closely connected in time, place, and occasion that it would be difficult to separate proof of one charge from proof of the others.

The present case was particularly suited for joinder. The defendants, acting in concert, and both being present, robbed a convenience store, murdering the store attendant and an innocent bystander. The acts of one were attributable to the other. In order to convict defendant Oliver of the first degree murder of Watts, the attendant, it was necessary to show that the murder was either committed by, or in the actual or constructive presence of Oliver in pursuance of a common plan or purpose. *State v. Joyner*, 297 N.C. 349, 255 S.E. 2d 390 (1979). Defendant Moore's conviction for the first degree murder of Hodge rested on the State's evidence that he and Oliver had formed a common plan to commit a crime and Hodge's murder was a probable consequence thereof. *Id.* In fact, in *Oliver I,* this Court considered as "frivolous," defendant Moore's contention that the trial judge should have instructed as to him on the offenses of accessory before and accessory after the fact to the crimes of armed robbery and murder. In *Oliver I* we stated that:

There is no evidence here that Moore was an accessory. The evidence shows that both defendants were present at the scene and were acting together in the commission of the armed robbery. The murders occurred in furtherance of their common purpose to commit this crime or as a natural consequence thereof. Where two or more persons 'join in a purpose to commit a crime, each of them, *if actually or constructively present*, is not only guilty as a principal if the other commits that particular crime, but he is also guilty of any other crime committed by the other in pursuance of the common purpose . . . or as a natural or probable consequence thereof.' *State v. Westbrook,* 279 N.C. 18, 41-42, 181 S.E. 2d 572, 586 (1971), *death sentence vacated,* 408 U.S. 939 (1972) (emphasis supplied); *accord, State v. Lovelace,* 272 N.C. 496, 158 S.E. 2d 624 (1968).

*State v. Oliver,* 302 N.C. at 55, 274 S.E. 2d at 200.

We also note that at the guilt phase of the trial, defendants were protected under *Bruton v. United States,* 391 U.S. 123, 20 L.Ed. 2d 476 (1968), in that out-of-court statements made by

Moore which tended to implicate defendant Oliver were not before the jury. 302 N.C. at 35, 274 S.E. 2d at 188 fn. 3.

The threshold question, then, is whether, with a view toward the necessity of death qualifying a jury pursuant to G.S. § 15A-2000, a joint trial at the guilt phase is appropriate under any circumstance.[4] Thus, although defendant Moore asserts in his brief that he is not "challenging the propriety of the joint trial on guilt or innocence, or even of the joint sentencing hearing held immediately after this trial, but only the propriety of the subsequent joint resentencing trial," we view the issue differently. If the joint trial on guilt or innocence and the first joint sentencing hearing were proper, a joint resentencing hearing, as we will illustrate below, would of necessity, be equally proper.

In arguing that these defendants were not prejudiced by the trial court's decision to permit a joint sentencing hearing in the first instance, the State points out that defendant Moore was given a life sentence for his conviction in the Hodge murder. Clearly the jury gave individual consideration to each defendant's *participation* in the murders. While the argument is persuasive, it is not determinative of the issue. As defendant Moore's participation in the Hodge murder was not an issue at resentencing, the State's argument is, at best, only an illustration that a joint sentencing hearing does not preclude individualized consideration of the appropriateness of the death penalty in each case.

We focus on each defendant's arguments in support of his contention that he was prejudiced by a joint resentencing hearing. In so doing, we note first that neither defendant attempts to argue that there is a *greater need* for separate sentencing trials at resentencing than at an original sentencing. Secondly, defendants' arguments in support of separate resentencing hearings are

---

4. The alternative of permitting a joint trial at the guilt phase, but requiring separate trials for sentencing, would do much to further defense attorney's position that death qualifying a jury results in a "guilt prone" jury. *See State v. Pinch,* 306 N.C. 1, 292 S.E. 2d 203; *State v. Oliver,* 302 N.C. 28, 274 S.E. 2d 183. We have consistently upheld the requirement of G.S. § 15A-2000(a)(2) that in capital cases, the jury be death qualified. That question aside, whatever advantage there may be to requiring separate sentencing trials, is clearly outweighed by the result of having to empanel three separate juries and conducting what would essentially be three separate trials.

equally applicable to sentencing in the first instance, and it is these arguments that we now reject.

The thrust of these arguments is that pursuant to G.S. § 15A-2000, a defendant is constitutionally entitled to individualized consideration of his character, his record, and his particular acts. *Lockett v. Ohio*, 438 U.S. 586, 57 L.Ed. 2d 973 (1978). Thus, argue defendants, a jury should not be allowed to hear the evidence admissible only against a co-defendant. Both defendants implore: "As difficult as it is for a defendant to defend his life against the state, no defendant should have to fight for his life against a co-defendant as well as the state." We are further asked, in evaluating this question, "to try to picture what the proceeding below would have been like" had each defendant been separately sentenced. Defendants then state that "[i]t would certainly not be stretching a point to say that the proceeding would have been far different and far fairer."

To illustrate, defendant Oliver argues that the aggravating factors that the murder of Allen Watts was especially heinous, atrocious or cruel and that it was committed for the purpose of avoiding a lawful arrest were erroneously submitted in his case, having been based on hearsay evidence admitted against defendant Moore. As noted earlier in this opinion, we agree that the submission of these factors, at sentencing, with respect to Oliver's individual culpability for the murder of Watts was error. The fact that the statement was admitted as a basis for submitting an aggravating factor against Oliver at both the sentencing and resentencing hearings does not *per se* render the joint trial so prejudicial as to require separate trials. The error lies not in granting the State's motion for a joint trial, but in basing an aggravating factor on evidence erroneously admitted as to the co-defendant Oliver.

Defendant Moore contends that the Hodge killing should not even have been mentioned before the jury at resentencing, where the only issue as to Moore was the penalty for the murder of Allen Watts. He states that "the jury was given the impression that they were punishing defendant Moore for both the Hodge and Watts murders." At the initial sentencing hearing, the jury determined that Moore's participation in the Hodge murder was "relatively minor," and he received a life sentence. At resentenc-

ing, the jury made appropriate findings in aggravation and mitigation, none of which included a consideration of the Hodge murder. Moore's own statements, coupled with his active part in the Watts' murder, were sufficient to support the jury's decision. In fact, in response to the prosecutor's request at resentencing that the trial judge "integrate" a standard charge on acting in concert into the charge on the aggravating and mitigating factors, the trial judge astutely commented:

> I don't think we have to. I'm a little scary on it. I do intend to tell them right at the outset, 'Now, Ladies and Gentlemen, you simply are not concerned with guilt or innocence. That has already been determined. Oliver is guilty of the murder of Watts and guilty of the murder of Hodge. Moore is guilty of the murder of Watts. He is not involved, as far as you are concerning (sic), in the murder of Hodge.'

It can be seen from the foregoing that the "evils" of which these defendants now complain were not peculiar to the resentencing trial, but were present at the original trial. That is, if facts were properly before the jury at the guilt phase, they were properly before the jury at sentencing and therefore at resentencing. *See* G.S. § 15A-2000(a)(3).

By their arguments, each defendant would ask that his respective culpability be viewed in a vacuum, somehow isolated and unconnected to the acts of the other. Yet, defendants' culpability for these crimes is inextricably intertwined and all evidence relevant to the circumstances of these crimes was properly before the jury at the guilt phase. We have held that the State is entitled to rely upon evidence which it produced at the guilt phase of the trial at the sentencing hearing. G.S. § 15A-2000 (a)(3); *State v. Hutchins*, 303 N.C. 321, 279 S.E. 2d 788, or at resentencing.

To summarize: Inasmuch as G.S. § 15A-2000 provides that the same jury may determine both guilt and sentence in a capital case; and accepting the State's argument that a jury, properly instructed, can in fact give individualized consideration to each defendant's culpability, *and did so at the first sentencing hearing,* we hold that defendants were not prejudiced by a joint trial in the first instance. With respect to resentencing, defendants have failed to show any greater prejudice by the holding of a joint

resentencing trial. Defendants, moreover, are entitled to no greater advantage than they enjoyed at the initial sentencing. This is so even when, as the circumstances present themselves in this case, a jury has previously determined that one defendant is to be given a life sentence in one murder. That is, there is absolutely no basis for finding as a matter of law, or on these facts, that a jury will impose a sentence of death based on a co-defendant's participation in a murder for which he alone must be sentenced. This Court is charged with the duty of carefully reviewing every capital case in which a sentence of death is imposed, *see State v. Johnson*, 298 N.C. 47, 257 S.E. 2d 597 (decision of the jury should be "searchingly" reviewed to insure absence of "unfairness, arbitrariness, or caprice"). It is not our role to second-guess a jury before whom evidence is properly presented and which has been properly instructed.

Finally, we have relied in part on the recent Supreme Court decision in *Enmund v. Florida*, 458 U.S. 782, 73 L.Ed. 2d 1140. That case involved a joint trial in a first degree murder case which, like the case before us, was tried on a felony-murder theory. Enmund was tried and sentenced jointly with his co-defendant. On appeal to the Supreme Court, Enmund argued successfully that in order to justify the imposition of the death penalty, the jury must consider each co-defendant's individual culpability in the murder; that is, whether a defendant who participated in a robbery actually killed, attempted to kill, or intended the death of the victim or that lethal force be employed. Implied in *Enmund* is approval of joint sentencing hearings with the caveat that there be individualized consideration given to each defendant's culpability.

## II

### DEFENDANT MOORE

#### 1. EVIDENTIARY ISSUES

[20] Defendant Moore assigns as error the admission of testimony concerning incidents that occurred in prison after his conviction for this offense. He argues that the evidence was irrelevant, inflammatory and prejudicial, constitutes impermissible hearsay, and that it permitted the jury to consider evidence of non-statutory aggravating factors. As it is possible that these

evidentiary issues may recur at resentencing, we will comment upon each of them.

We begin with the proposition that in order to prevent arbitrary or erratic imposition of the death penalty, the State must be permitted to present, by competent, relevant evidence, any aspect of a defendant's character or record and any circumstances of the offense that will substantially support the imposition of the death penalty. *State v. McDougall*, 308 N.C. 1, 301 S.E. 2d 308.

Turning then to the testimony complained of, we consider the following:

William Bennett Dillard, Jr., an employee of the North Carolina Department of Correction at Central Prison, testified as to an incident that occurred as the "death row inmates" were being removed from the recreation yard. Moore allegedly hit another inmate on the side of the head and as the inmate turned around, Moore stated "I have killed white mother f—— before, and I can kill you—I will kill again." On cross-examination Mr. Dillard was asked and did not recall the name of the other inmate or inmates involved in the incident. On redirect, Mr. Dillard was asked how it was that he had known Moore's name, but had trouble remembering the names of other inmates. Dillard responded that "If they do keep causing trouble, you know, officers learn their names quicker than other inmates' names, and inmate Moore has been wrote up for several charges, for two or three assaults."

Edward Alline, a correction officer at Central Prison, testified as a witness for defendant Oliver. On cross-examination, Officer Alline was questioned concerning Moore's reputation in prison. He testified that Moore was the "kind of a person that you have to talk to in order to be obedient."

With respect to Officer Dillard's reference to "death row inmates," defendant objected to that portion of the answer as being nonresponsive. The objection was overruled. Defendant did not move to strike. *See State v. Chatman*, 308 N.C. 169, 301 S.E. 2d 71 (1983). Defendant contends, under the authority of *State v. Britt*, 288 N.C. 699, 220 S.E. 2d 283, that this statement constituted reversible error.

*Britt* dealt with a deliberate and repeated reference which made it abundantly clear to the jury that the defendant had been

on death row. The jury was then apprised, by the trial judge's "curative" instruction, that defendant had, in fact, been sentenced to death by another jury in the same case. In finding the challenged questions by the district attorney to be "highly improper and incurably prejudicial," this Court wrote that:

> [N]o instruction by the court could have removed from the minds of the jurors the prejudicial effect that flowed from knowledge of the fact that defendant had been on death row as a result of his prior conviction of first degree murder in this very case. The probability that the jury's burden was unfairly eased by that knowledge is so great that we cannot assume an absence of prejudice. *State v. Hines, supra.*

*Id.* at 713, 220 S.E. 2d at 292.

Thus, the evil addressed in *Britt* was the potential danger that this knowledge, *i.e.*, that another jury had sentenced defendant to death in "this very case," would unfairly ease the second jury's burden in deciding to impose the death sentence.

While we find the facts in the present case distinguishable, we must caution prosecutors to scrupulously avoid any reference to death row or death row inmates, and to fully instruct their witnesses to avoid any reference to death row or death row inmates whenever it is appropriate to do so.

Moore's admission that he had killed whites before was introduced solely for the purpose of corroborating the testimony of Johnny Lee Lewis that Moore had, in fact, been the "trigger man" in the murder of Watts. This was the argument made at voir dire, prior to the introduction of the testimony, and was again made during the prosecutor's final argument to the jury.[5] We hold that under these circumstances, the testimony was relevant and admissible for the purpose for which it was offered. *See State v. Brown,* 306 N.C. 151, 293 S.E. 2d 569 (defendant's statement to fellow inmate held admissible); *State v. Perry,* 276 N.C. 339, 172 S.E. 2d 541 (1970) (defendant's admission to jailmate that he had shot the deceased held admissible); as to corroboration, *see*

---

5. "I have killed white M.F.'s before and I will kill again." If you look at his record, Ladies and Gentlemen of the Jury, you see no previous convictions for homicide. What is he talking about? He's talking about Allen Watts. He's admitting, in effect, that he was the trigger man in that killing.

*generally* 1 Brandis on North Carolina Evidence § 49 (2d Rev. Ed. 1982).

We note that although *Enmund v. Florida*, 458 U.S. 782, 73 L.Ed. 2d 1140, was not decided until after this sentencing hearing, under that case, the burden would be on the State to prove that defendant Moore personally killed Watts, was actually present, or intended that Watts be killed. Thus, Lewis's testimony has become highly relevant, as is the corroborative testimony offered by Dillard.

In cross-examining Officer Dillard concerning Moore's admission, defense counsel questioned Dillard closely about his inability to remember the exact date of the incident or the names of the other inmates. Thus, it was proper on redirect examination for the district attorney to ask Dillard how he had remembered only Moore's name. Under these circumstances, Officer Dillard's response was admissible. *See State v. Small*, 301 N.C. 407, 272 S.E. 2d 128 (1980) (evidence which might not otherwise be admissible may become admissible to explain or rebut evidence put in by the defendant himself).

Finally, defendant objects to the admission of testimony elicited from Edward Alline that Moore had a reputation for being uncooperative at Central Prison. The State responds that this reputation evidence was admissible to rebut evidence of good character which Moore *later* intended to introduce. We held in *State v. Taylor*, 304 N.C. 249, 283 S.E. 2d 761, that only after defendant has offered evidence of mitigating circumstances may the State offer evidence in rebuttal. We find it irrelevant that "the prosecutor knew already Moore would put on good character evidence from the last hearing." While the admission of this testimony, offered by the State solely to refute a mitigating circumstance upon which defendant might later rely, was error, the error was not prejudicial. Officer Dillard had testified that Moore had assaulted and threatened a fellow inmate and that he remembered him as a troublemaker who had been "wrote up." Officer Alline's testimony offered nothing not already properly elicited from Officer Dillard.

Furthermore, properly presented, much of the testimony concerning Moore's assaultive behavior and uncooperative attitude in prison would have been relevant to rebut the statutory mitigating

factor G.S. § 15A-2000(f)(7), the age of the defendant at the time of the crime. Relevant to this inquiry is not only the chronological age of the defendant, but also his experience, criminal tendencies, and presumably the rehabilitative aspects of his character. *See Giles v. State*, 261 Ariz. 413, 549 S.W. 2d 479, *cert. denied*, 434 U.S. 894 (1977).

[21] Defendant Moore next assigns as error the admission of testimony elicited on cross-examination of a character witness concerning defendant's prior criminal record. Larry Vaught testified in Moore's defense. He testified that the defendant had never engaged in fighting; had never carried a gun; and had never carried a knife. On cross-examination, the witness was asked if he was aware of defendant's prior convictions on charges of larceny, trespassing, damage to real property, and breaking or entering and larceny. The witness was aware that defendant had served time in prison but was not familiar with the various charges on particular dates. He then stated, in response to the prosecutor's question, that he did not know everything about the defendant.

Defendant had, prior to this testimony, stipulated to his criminal record and it was before the jury. Furthermore, defendant failed to object to any of the questions or responses. While we agree that a character witness may not be questioned on cross-examination as to a defendant's particular acts of misconduct, *State v. Hunt*, 287 N.C. 360, 215 S.E. 2d 40 (1975), we find no plain error sufficient to justify awarding defendant a new trial on this issue. The error was not brought to the attention of the trial judge, and as the jury had previously been apprised of the information elicited on this exchange, the error here complained of does not rise to the status of one so grave as amounts to a denial of a fundamental right of the accused. *State v. Black*, 308 N.C. 736, 303 S.E. 2d 804.

[22] Defendant Moore next argues that the trial judge improperly limited his cross-examination of Bobby Hodge and Johnny Lee Lewis.

Bobby Hodge was the grandson of the deceased, Dayton Hodge. He was present at the time of the killings. He testified that he saw defendant Moore come out of the store after the Watts' shooting. At the first trial, Bobby had testified that he did

not recognize Moore as the man who came out of the store. On cross-examination at resentencing, defense counsel asked Bobby if he remembered his testimony at the first trial that he hadn't recognized Moore. The child answered "Yes, sir." Defense counsel then asked "But you didn't recognize him at that time, but you do recognize him now?" Bobby answered, "No, sir." The prosecutor objected and the objection was sustained, at which time the trial judge correctly pointed out that "a question of guilt" was not at issue.

This assignment of error is without merit. The child's answer was before the jury. The jury was never instructed to disregard the question or answer. The information sought to be elicited was already before the jury; that is, that Bobby Hodge had earlier been unable to identify Moore. Because Moore's guilt had already been determined, the substance of the question was collateral to sentencing. We have stated repeatedly that the scope of cross-examination lies largely within the sound discretion of the trial court, and its rulings will not be disturbed absent a showing of prejudicial error. *State v. Atkins,* 304 N.C. 582, 284 S.E. 2d 296 (1981). We find no such error here.

Likewise, we find no error in the trial judge's ruling in the cross-examination of Johnny Lee Lewis. Defense counsel questioned Lewis about the shooting death of his wife, for which he was serving a prison sentence for second degree murder. The objected to testimony concerned how many times Lewis had shot his wife. The trial judge correctly stated "We are not trying that case."

2. INEFFECTIVE ASSISTANCE OF COUNSEL

[23] Defendant contends that he was denied effective assistance of counsel inasmuch as his attorney, Robert D. Jacobson, had represented the State's witness, Johnny Lee Lewis, on Lewis's appeal to this Court. *See State v. Lewis,* 298 N.C. 771, 259 S.E. 2d 876 (1979). He therefore alleges a "conflict of interest." Defendant Moore was aware of this "conflict of interest" at the first trial. *See* Record, *Oliver I,* pp. 461-62. This knowledge apparently did not concern him sufficiently to retain new counsel prior to re-sentencing. Furthermore, defendant fails to enunciate in what way he was prejudiced by this "dual representation." In *State v. Nelson,* 298 N.C. 573, 260 S.E. 2d 629 (1979), *cert. denied,* 446 U.S.

929 (1980), we rejected a *per se* rule that would compel counsel to withdraw completely from any case wherein a conflict developed and we declined to award a new trial in the absence of a showing of actual prejudice. This defendant Moore has failed to do. He neither suggests nor discusses how Attorney Jacobson's representation on Lewis's appeal rendered Jacobson's representation of Moore ineffective. In fact, Jacobson's familiarity with Lewis's prior criminal record, including the shooting death of his wife, worked to defendant's advantage in Jacobson's cross-examination of Lewis.

### 3. PEREMPTORY INSTRUCTION ON AGE IN MITIGATION

[24] Finally, defendant Moore contends that the trial judge erred in failing to peremptorily instruct that Moore's age was a mitigating factor. This assignment of error is meritless. At the time of the crime defendant was nineteen years eleven months of age. As we stated earlier, the chronological age of a defendant is not the determinative factor under G.S. § 15A-2000(f)(7). To this effect we cite with approval the language in *Giles v. State*, 261 Ariz. at 483, 549 S.W. 2d at 483:

> Any hard and fast rule as to age would tend to defeat the ends of justice, so the term youth must be considered as relative and this factor weighed in the light of varying conditions and circumstances. It is well known that two young persons may vary greatly in mental and physical development, experience and criminal tendencies (citation omitted). One of these factors may have greater significance than the others in some cases, depending on the circumstances.

### III

### DEFENDANT OLIVER

### 1. EVIDENTIARY ISSUES

[25] Defendant Oliver contends that the trial judge erred in not permitting him to elicit testimony concerning his reputation in the community.

The defendant offered testimony of eight character witnesses. Both Officer Dillard and Officer Alline testified that defendant Oliver, unlike defendant Moore, did not have a reputation as a disciplinary problem at Central Prison. Marion Eaddy, de-

fendant's brother-in-law, testified that defendant worked for him at his used car lot and was a good worker. Defendant was a "fine person," "most mannerly," and "raised up in a well home." "His father is a deacon." Joanne Eaddy testified that defendant was "well mannered"; that "his reputation has always been good." Reverend Anderson testified that defendant was a "good worker," "a respectable boy," and an "honorable boy." Reverend English testified that defendant had a good reputation in his community as did Isaac Oliver, defendant's father. Doris Harley, a school friend, testified that defendant was well mannered and polite. He would hold open doors for people and was willing to help others.

The substance of defendant's contention on this issue occurred during direct examination of Reverend Anderson. The Reverend testified that defendant was "a respectable boy, but something went wrong somewhere down the road. I don't know what, but he's an honorable boy. He's honorable. He's honored all people that's older than he is, in my establishment—in our establishment." Objection was taken to "a continued remark." At this point the testimony had become repetitive and the trial court acted properly and within its discretion in sustaining the objection. *State v. Hutchins*, 303 N.C. 321, 279 S.E. 2d 788.

Reverend Anderson was then asked if he had "heard other people in the Fair Bluff community say other things about him [Oliver], anything else about him?" An objection to this question was sustained. The witness had previously stated that the "big majority of the people think well of J. W." Thus, the objected to question, in light of all the previous testimony, had essentially been answered. We have held that the statute governing evidence admissible at the sentencing phase of a bifurcated capital felony case does not alter the usual rules of evidence or impair the trial judge's power to rule on the admissibility of evidence. *State v. Cherry*, 298 N.C. 86, 257 S.E. 2d 551. We find no error in the trial court's ruling.

We note, however, in reviewing the testimony of these character witnesses, that the prosecutor's cross-examination arguably exceeded the bounds of propriety, was at best inappropriate, and, as discussed earlier, was contrary to law in that repeated reference was made to Oliver's criminal record and specific acts of mis-

conduct. We caution again that cross-examination of a criminal defendant's character witness may not extend to particular instances of misconduct. *See State v. Hunt,* 287 N.C. 360, 215 S.E. 2d 40; *see also State v. Lefevers,* 216 N.C. 494, 5 S.E. 2d 552 (1939); *State v. Cathey,* 170 N.C. 794, 87 S.E. 532 (1916); *see generally* 1 Brandis on North Carolina Evidence § 115 (2d Rev. Ed. 1982).

### 2. INADEQUATE JURY INSTRUCTION

[26] Defendant Oliver argues that the trial judge erred in failing to fully instruct the jury because, rather than repeating his instructions after instructing as to Moore, the trial judge stated that his instructions remained the same for Oliver as he had just given for Moore. Defendant made no objection to his procedure at trial.

The trial judge handed out written instruction sheets as to each defendant and each case. Thus, the jury received three sets of instructions. The trial judge then explained Moore's instructions and explained where Oliver's instructions differed. Considering the fact that each set of instructions was fully written out and was before the jury, defendant has failed to show how he was prejudiced. In fact, the trial judge is to be commended for providing the jurors with instructions in written form. *See State v. Brown,* 306 N.C. 151, 293 S.E. 2d 569 (holding no error in the trial court's failure to submit the charge in writing, at the request of the defendant). We approve of this procedure in a joint sentencing hearing should either defendant so request and should the number, complexity, and nature of the aggravating and mitigating factors so dictate.

### IV

### PROPORTIONALITY

[27] By this opinion we are affirming defendant Oliver's sentence of death for the murder of Dayton Hodge. It is therefore necessary that we review the record, pursuant to G.S. § 15A-2000 (d)(2), to determine (1) whether the record supports the jury's finding of any aggravating circumstance or circumstances upon which the sentencing court based its sentence of death, (2) whether the sentence was imposed under the influence of passion, prejudice or any other arbitrary factor, and (3) whether the sentence of death

is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. After a thorough review of the transcript, record on appeal and briefs of the defendant and the State in the present case, we find that the record, for reasons previously pointed out herein, completely supports the jury's written findings of the aggravating circumstances in defendant Oliver's case for the Hodge murder. We further find that the death sentence was not imposed under the influence of passion, prejudice or any other arbitrary factor and that the transcript and record are devoid of any indication that such impermissible influences were a factor in the sentence.

Finally we must determine whether the sentence of death in this case is excessive or disproportionate to the penalty imposed in similar cases considering both the crime and the defendant. For purposes of this proportionality review, we have used as a pool for comparison

> *all cases* arising since the effective date of our capital punishment statute, 1 June 1977, which have been tried as capital cases and reviewed on direct appeal by this Court and in which the jury recommended death or life imprisonment or in which the trial court imposed life imprisonment after the jury's failure to agree upon a sentencing recommendation within a reasonable period of time.

*State v. Williams*, 308 N.C. 47, 79, 301 S.E. 2d 335, 355 (1983).

In the case of defendant Oliver's murder of Dayton Hodge, we hold as a matter of law that the sentence is neither disproportionate nor excessive considering both the crime and this defendant. Murder can be motivated by emotions such as greed, jealousy, hate, revenge, or passion. The motive of witness elimination lacks even the excuse of emotion. We are persuaded by the fact, as we were in *State v. Williams*, 305 N.C. 656, 292 S.E. 2d 243, that the Hodge murder was the result of a deliberate plan to seek out a business establishment to rob and, without the slightest provocation or excuse, to callously and in cold blood shoot at close range anyone unfortunate enough to be present at the time. Dayton Hodge was murdered. His grandson's life was miraculously spared. With this holding, the statutory death sentence must be affirmed.

To summarize our holding:

1. As to defendant Oliver for the murder of Dayton Hodge, the sentence of death is affirmed.

2. As to defendant Oliver for the murder of Allen Watts, for error found in the submission of two aggravating factors, and due to the peculiar facts surrounding this defendant's participation in this murder, the case is remanded to Superior Court, Robeson County, for resentencing.

3. As to defendant Moore for the murder of Allen Watts, for error found in the jury instruction on one aggravating factor, the case is remanded to Superior Court, Robeson County, for resentencing.

Case 78CRS25575 State v. John Wesley Oliver—no error.

Case 78CRS25576 State v. John Wesley Oliver—remanded for resentencing.

Case 78CRS25578 State v. George Moore, Jr.—remanded for resentencing.

Justice MARTIN dissenting in part and concurring in part.

I dissent from the portion of the majority opinion that holds the solicitor's argument, improperly placing the burden of proof on defendants with respect to the jury's recommendation of life imprisonment, was error but not prejudicial. I find it to be prejudicial error. This error requires a new sentencing hearing.

Otherwise, I concur in the well-reasoned majority opinion.

Justice FRYE joins in this opinion.

Justice EXUM dissenting.

In my view both defendants are entitled to new sentencing hearings (Moore in the Watts murder and Oliver in both murders) because the district attorney was permitted to say in his final argument that defendants had the burden of satisfying the jury they deserved life imprisonment:

> The burden is on them, not beyond a reasonable doubt, but the burden is on them by the preponderance of the evidence to satisfy you that there is something about these defendants of a redeeming value that gives rise to the mitigation that will cause you to drop it down to life imprisonment.

A defendant in a capital case does have the burden to satisfy the jury by a preponderance of the evidence that particular mitigating circumstances exist, *State v. Johnson,* 298 N.C. 47, 257 S.E. 2d 597 (1979); but our capital sentencing statute makes it abundantly clear that even though defendant bears this burden, the burden of persuading the jury that the crime and defendant are deserving of death remains always with the state. The majority concedes that, standing alone, the argument was error; but it concludes that when considered in context of the prosecutor's entire argument and the trial court's instructions to the jury on the various burdens of persuasion, the error was harmless.

I cannot join in this conclusion. Nowhere in the trial court's instructions did it call attention to the particular erroneous statement by the prosecutor or direct the jury to disregard it. Nowhere did the trial court instruct generally that if his instructions on questions of law differed from the law as argued by counsel, the jury would be guided solely by what the court, not the lawyers, said. Indeed, the trial court told the jury to do just the opposite:

> It is your duty, not only to consider all of the evidence, but also to consider all of the arguments, the contentions and positions urged by the State's attorney and by the defense attorneys in their speeches to you, and any other contention that arises from the evidence; to weigh them in the light of your common sense and to make your recommendations as to punishment.

It is true that the trial court's instructions were correct on the various burdens of persuasion arising under the statute and that the court did tell the jury to apply the law "as I give it to you." It is extremely doubtful, however, that in the absence of a specific instruction to do so, the jury on its own motion disregarded what the prosecutor said on this point. It is particularly unlikely in light of his subsequent instruction that it was the jury's "duty . . . to consider all of the arguments, the contentions

and positions urged by the State's attorney." Indeed, depending on the relative force and vigor with which the point was made by the prosecutor and the trial court, respectively, the jury might well have given more weight to the prosecutor's version than it did to the trial court's, at least in the absence of more specific instructions on the defect in the prosecutor's version of the law.

Neither do I see how the prosecutor's other arguments made before and after the offending statement detract from its prejudicial effect. The majority seems to conclude that the prosecutor intended merely to argue that the burden of persuasion on the existence of specific mitigating circumstances was on defendants. Since this is what the prosecutor meant to say, the majority concludes the jury must have so understood his words. His words, however, unequivocally assign to defendants the burden of persuading the jury that the sentences should be "dropped down" to life imprisonment once the state has persuaded it of the existence of aggravating circumstances. Without cautionary jury instructions directed specifically and expressly to the error in the prosecutor's statement and in light of instructions which directed the jury to consider "all of the arguments . . .," I am unable to conclude that the statement did not mislead the jury to defendants' prejudice as to which party bore the burden of persuasion on the ultimate question whether defendants should live or die.

Even if it is conceded that the death penalty is not an inappropriate punishment as a matter of law, the case for a death sentence here is not overwhelming. There is little to distinguish these cases from other armed robberies where the victims, or others, were murdered and life imprisonment was imposed. *See e.g., State v. Barnett* [, *Barnett and Wilder*], 307 N.C. 608, 300 S.E. 2d 340 (1983) (armed robbery of convenience store and murder of clerk; one defendant shot at patron leaving the store); *State v. Miller* [*and Williams*], 302 N.C. 572, 276 S.E. 2d 417 (1981) (armed robbery of convenience store and murder of operator); *State v. Moore,* 301 N.C. 262, 271 S.E. 2d 242 (1980) (defendant shot manager of supermarket in armed robbery of the store with an accomplice); *State v. Weimer,* 300 N.C. 642, 268 S.E. 2d 216 (1980) (defendant drove getaway car in armed robbery of supermarket and murder of manager); *State v. Atkinson,* 298 N.C. 673, 259 S.E. 2d 858 (1979) (armed robbery of grocery store and murder of operator by beating with baseball bat); *State v. Cherry,*

298 N.C. 86, 257 S.E. 2d 551 (1979), *cert. denied,* 446 U.S. 941 (1980) (received death penalty at original trial but received life imprisonment on resentencing for armed robbery of convenience store and murder of an employee); *State v. Crews [and Turpin],* 296 N.C. 607, 252 S.E. 2d 745 (1979) (two defendants shot and killed two strangers to obtain their money and vehicle; one of the victims begged Turpin three times not to shoot him but Turpin shot him once in the arm and then in the head). In close cases, placement of the burden of persuasion is critical to the outcome. I cannot conclude, therefore, that the error could not have affected the outcome of the sentencing hearing. *See* G.S. 15A-1443 (1978).

Defendant Moore is entitled to a new sentencing hearing in the Watts murder on the separate ground that inadmissible and highly prejudicial evidence was offered against him. The jury knew: both Moore and Oliver had been previously convicted of the capital crime of first degree murder; the question of their guilt had been finally determined; and it was to determine only the punishment to be imposed for that conviction. Yet the prosecutor was permitted to elicit evidence, over defendant's objection, that Moore was on "death row," clearly indicating that Moore had been sentenced to death at his first trial.

In *State v. Britt,* 288 N.C. 699, 220 S.E. 2d 283 (1975), tried by the same prosecutor who tried the instant case, defendant had been convicted of a capital crime and sentenced to death. He won a new trial. At his second trial the prosecutor put before the jury the fact that defendant had been on "death row." The trial judge instructed the jury not to consider this fact nor the fact that defendant had been previously convicted. This Court, in a thoroughly documented opinion by Justice Huskins, concluded that this kind of error could not be cured by cautionary instructions and gave defendant still another trial. The Court said:

A fair consideration of the principles established and applied in these cases constrains us to hold that no instruction by the court could have removed from the minds of the jurors the prejudicial effect that flowed from knowledge of the fact that defendant had been on death row as a result of his prior conviction of first degree murder in this very case. The probability that the jury's burden was unfairly eased by that knowledge is so great that we cannot assume an absence of

prejudice. *State v. Hines, supra.* We hold the challenged questions by the district attorney were highly improper and incurably prejudicial.

288 N.C. at 713, 220 S.E. 2d at 292.

The majority cautions prosecutors "to scrupulously avoid any reference to death row or death row inmates" but fails to say whether the evidence that Moore was on death row constituted error entitling Moore to a new sentencing hearing. The majority says *Britt* is distinguishable, but it fails to distinguish it. The question, not answered by the majority, is whether it is reversible error to inform the jury that a defendant in a capital case at a resentencing hearing is on "death row." *Britt* held that it is. *Britt* controls this issue. The majority wrongly fails to follow *Britt* and to declare that this error warrants a new sentencing hearing for Moore.

Finally, not only Oliver but Moore also is entitled to a new sentencing hearing in the Watts murder because there is no evidence to support submission of the "especially heinous" aggravating circumstance in these cases. I recognize that we held to the contrary in an opinion I authored for the Court on the first appeal of this case. *State v. Oliver [and Moore]*, 302 N.C. 28, 274 S.E. 2d 183 (1981) (*Oliver I*). I am now satisfied this holding was wrong and we should now acknowledge our error. "Wisdom too often never comes, and so one ought not to reject it merely because it comes late." *Henslee v. Union Planters National Bank & Trust Co.*, 335 U.S. 595, 600 (1949) (Frankfurter, J., dissenting).

I accept the majority's definition of the "especially heinous" aggravating circumstance. The majority recognizes that an "especially heinous, atrocious or cruel" murder is one which essentially inflicts unusual physical or psychological suffering upon the victim prior to the infliction of death. The majority says this is a case of psychological suffering because the victim Watts said "please don't shoot me" immediately before defendant Moore fired the fatal shot. This plea is really all there is, although the majority vaguely refers to "the entire set of circumstances surrounding the killing." Apparently these circumstances which the majority deems important are the planning of the robbery and Moore's later boasts about the killing. Neither of these things has any bearing on whether Moore inflicted physical or psychological

suffering upon Watts. It is clear there was no physical suffering. Since the fatal shot was fired immediately after Watts said, "Please don't shoot me," and instantly rendered Watts either dead or unconscious, I can discern no psychological suffering in this case. All the cases cited by the majority had elements of either physical or psychological suffering before death. This case has none. In *State v. Pinch,* 306 N.C. 1, 292 S.E. 2d 203 (1982), relied on by the majority, this Court said:

> In accordance with the dictates of the Eighth Amendment, our Court has adhered to the position that the aggravating circumstance of G.S. 15A-2000(e)(9) 'does not arise in cases in which death was immediate and in which there was no unusual infliction of suffering upon the victim.' *State v. Rook,* 304 N.C. 201, 226, 283 S.E. 2d 732, 747 (1981), *cert. denied,* 455 U.S. 1038, 102 S.Ct. 1741, 72 L.Ed. 2d 155 (1982); *see Godfrey v. Georgia,* 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed. 2d 398 (1980); *see, e.g., State v. Hamlette,* 302 N.C. 490, 504, 276 S.E. 2d 338, 347 (1981) (submission of G.S. 15A-2000(e)(9) was erroneous). Instead, our Court has made it clear that the submission of G.S. 15A-2000(e)(9) is appropriate only when there is evidence of excessive brutality, beyond that normally present in any killing, or when the facts as a whole portray the commission of a crime which was conscienceless, pitiless or unnecessarily tortuous to the victim. *State v. Goodman,* 298 N.C. 1, 257 S.E. 2d 569 (1979); *see e.g., State v. Martin,* 303 N.C. 246, 278 S.E. 2d 214, *cert. denied,* 454 U.S. 933, 102 S.Ct. 431, 70 L.Ed. 2d 240 (1981); *State v. Oliver,* 302 N.C. 28, 274 S.E. 2d 183 (1981).

306 N.C. at 34-35, 292 S.E. 2d at 227-28. The Court sustained the submission of the "especially heinous" circumstance because it found:

> It suffices to say that the deaths of the unsuspecting victims were not instantaneous and that both killings involved the infliction of unusual physical or psychological torture. Each victim essentially witnessed (or heard) the shooting of the other and was helpless to prevent this unprovoked horror.

306 N.C. at 35, 292 S.E. 2d at 228. This case involves neither physical nor psychological torture. Death, or at least unconsciousness, was immediate, and "there was no unusual infliction of

suffering upon the victim." The "especially heinous" circumstance, therefore, should not have been submitted.

For all the foregoing reasons I vote to give defendant Oliver a new sentencing hearing in both murder cases and defendant Moore a new sentencing hearing in the Watts murder case.